FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
HILLCREST ASSOCIATES ET AL.
(15084)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued March 14—decision released May 16, 1995

*Robert E. Pace*, with whom was *Cynthia A. Jaworski*, for the appellant (substitute plaintiff Federal Deposit Insurance Corporation).

*Michael J. Mannion*, for the appellees (defendants).

BORDEN, J. The dispositive question in this case is whether the thirty day time limitation contained in General Statutes § 49-14 (a)[1] is subject matter jurisdic-

---

[1] General Statutes § 49-14 provides: "DEFICIENCY JUDGMENT. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"(b) Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee, who shall have and exercise the powers of the court with respect to trial, judgment and appeal in such case.

"(c) Any party to a mortgage foreclosure who has moved for an appraisal of property for the purpose of obtaining a deficiency judgment, but has not been granted a deficiency judgment, or has not received full satisfaction of any deficiency judgment obtained subsequent to the filing of such motion, may make a motion to the court for a deficiency judgment as set forth in subsection (a) of this section. If such motion is made on or before November 1, 1979, such moving party shall be deemed to have complied with all of the requirements of subsection (a) of this section and shall be entitled to the benefit of any deficiency judgment rendered pursuant to said subsection (a).

"(d) Any appeal pending in the supreme court with regard to any deficiency judgment or proceedings relating thereto shall be stayed until a hearing is held pursuant to subsection (a) of this section. Any appellant in such an appeal shall have the right for a period of thirty days after the render-

tional. This and another question[2] come to us upon certification by the United States Court of Appeals for the Second Circuit (Court of Appeals) pursuant to General Statutes § 51-199a and Practice Book § 4168.[3] *Federal Deposit Ins. Corp.* v. *Hillcrest Associ-*

ing of judgment pursuant to subsection (a) of this section to amend his appeal. There shall be no stay of such an appeal if no motion has been filed pursuant to this section on or before November 1, 1979."

[2] Upon certification by the United States Court of Appeals for the Second Circuit, we accepted the following questions: (1) "In the circumstances of this case, when did the thirty day time limitation contained in General Statutes § 49-14 (a) begin to run?" and (2) "Is the thirty day time limitation contained in General Statutes § 49-14 (a) jurisdictional?" *Federal Deposit Ins. Corp.* v. *Hillcrest Associates,* United States Court of Appeals, Second Circuit, Docket No. 93-6372 (August 29, 1994).

[3] General Statutes § 51-199a provides: "UNIFORM CERTIFICATION OF QUESTIONS OF LAW ACT. (a) This section may be cited as the Uniform Certification of Questions of Law Act.

"(b) The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

"(c) This section may be invoked by an order of any of the courts referred to in subsection (b) of this section upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

"(e) The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to the supreme court by the clerk of the certifying court under its official seal. The supreme court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of the supreme court, the record or portion thereof may be necessary in answering the questions.

"(f) Fees and costs shall be the same as in civil appeals docketed before the supreme court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

"(g) Proceedings in the supreme court shall be those provided in the rules of said court.

*ates,* United States Court of Appeals, Second Circuit, Docket No. 93-6372 (August 29, 1994). We conclude that the thirty day time limitation contained in § 49-14 (a) is not subject matter jurisdictional.

The record certified by the Court of Appeals provides the following facts and procedural history. The named defendant, Hillcrest Associates (Hillcrest), is a Connecticut general partnership involved in real estate ventures. The individual defendants were general partners of Hillcrest,[4] and the other defendant is People's Bank (People's), a lienholder on the property involved in this case. On October 1, 1987, Hillcrest, in order to secure a promissory note in the principal amount of $1,600,000, granted a mortgage on property located in New Britain to CityTrust, a Connecticut bank. The individual defendants personally guaranteed the note. In January, 1991, CityTrust brought this action in the Superior Court against the defendants, seeking a strict foreclosure and a deficiency judgment. In addition, CityTrust brought a separate action against the individual defendants in their capacity as guarantors of the note, in connection with which CityTrust secured prejudgment remedies against the individual defendants.

"(h) The written opinion of the supreme court stating the law governing the questions certified shall be sent by the clerk under the seal of the supreme court to the certifying court and to the parties.

"(i) This section shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Practice Book § 4168 provides in pertinent part: "The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state."

[4] The individual defendants are: Charles F. Stelljas; Jackie Chan; Thomas J. Scozzafava, Jr.; Donald A. Mitchell; Henry H. Moy; Paul F. Valluzzo; William Behari, Jr.; Robert F. Morlock; Hans C. Otto; Robin E. Otto; and Adele Stelljas. We refer herein to Hillcrest and the individual defendants collectively as the defendants.

Subsequently, CityTrust became insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver of CityTrust under the Federal Deposit Insurance Act and state law. In September, 1991, pursuant to federal law, the FDIC removed the foreclosure action and the action on the note to the United States District Court for the District of Connecticut. At that time, the FDIC was substituted for CityTrust as the plaintiff and the actions were consolidated. Magistrate Judge F. Owen Eagan granted the motion of the FDIC for default against the defendants for failure to plead, and District Judge Ellen B. Burns endorsed Magistrate Judge Eagan's order.

Thereafter, the FDIC moved for a judgment of strict foreclosure, and Magistrate Judge Eagan held a hearing on the motion on August 26, 1992. At that hearing, the defendants consented to a judgment of strict foreclosure, but asked to reserve the issues of the amount of the debt, the attorney's fees and the value of the property for a hearing on a motion for a deficiency judgment. The defendants also requested an early law day in order to stop the accrual of interest on the debt. The FDIC agreed to an early law day, but requested more time before title vested in it because it wanted to complete an environmental assessment of the property before making the final decision regarding whether to complete the foreclosure by taking title to the property.

Magistrate Judge Eagan set law days of September 28, 1992, for the defendants, and September 29, 1992, for People's. Pursuant to the agreement of the parties, the magistrate judge further ordered that, for purposes of a deficiency judgment, the value of the property would be set as of September 30, 1992. He also ordered, however, that title would vest in the FDIC on November 1, 1992, and that any motion for a deficiency judgment would have to be filed within thirty days of November 1, 1992.

From the viewpoint of the FDIC, the period between September 29, 1992, the last law day, and November 1, 1992, the date Magistrate Judge Eagan ordered the vesting of title, was to afford the FDIC an opportunity to complete an environmental assessment of the property. The FDIC stated to Magistrate Judge Eagan that if the FDIC decided that "the property is so polluted that we're not going to take it back," it would request permission of the court to open the judgment of strict foreclosure, presumably withdraw the foreclosure action and pursue the individual defendants solely on the note. The magistrate judge indicated, and the FDIC agreed, that any request by the FDIC to open the judgment of strict foreclosure between the last law day and November 1, 1992, would be subject to the discretion of the court and that "I don't want you to think you've got a guarantee from the court" that such a motion would be granted. The defendants, however, questioned whether "once title is vested . . . the court can unvest" it, and stated that "[under] state procedure title vests . . . after the law date is gone. Whether that can be changed by order, I don't know."

Upon the request of the magistrate judge, the FDIC drafted a judgment incorporating his rulings. The defendants' counsel reviewed a draft of the order and, in addition to other suggestions, commented that the reference in the draft to the filing of a motion for a deficiency judgment might not belong in a judgment of strict foreclosure. Thereafter, the magistrate judge approved, retroactive to August 26, 1992, a final draft of the judgment that incorporated some of the defendants' other suggestions. The judgment specified the dates for the law days, for the setting of the value of the property, for the vesting of title in the FDIC and for the filing of a motion for a deficiency judgment as specified above. The parties had no objections, and on October 5, 1992, the District Court endorsed the judgment.

More specifically, the judgment ordered a strict fore-closure of the mortgage in favor of the FDIC. The judgment also recited the amount of the debt, real estate taxes, and attorney's fees, but "for the purpose of entering this judgment of strict foreclosure and the establishment of law days only. The defendants have reserved the right to question the calculation of the debt, the rate or rates of interest applied and the propriety of the item included in the debt, including attorney's fees. In addition, the defendants have reserved the right to require the [FDIC] to account for the collection of rents by the court-appointed receiver of rents and, if such rents are disbursed to the [FDIC] by this District Court, to claim a credit against the debt for all or a portion of the rents collected. These issues may be raised by the defendants at the hearing on any . . . motion for a deficiency judgment which the [FDIC] may file." In addition, the judgment recited a finding of the value of the property of $1,050,000 "for the purposes of entering this judgment of strict foreclosure and the establishment of law days only. The defendants have reserved the right to introduce evidence at the hearing on any motion for a deficiency judgment which the [FDIC] may file." Finally, the judgment stated: "Provided, however, that: (i) the day on which the value of the Premises is determined for purposes of any deficiency judgment in this case shall be deemed to be September 30, 1992; and (ii) a motion for deficiency judgment must be filed by the [FDIC] within thirty (30) days of November 1, 1992."

On November 4, 1992, the FDIC recorded a certificate of foreclosure on the land records, and on November 5, 1992, moved for a deficiency judgment. The defendants moved to dismiss the motion for deficiency judgment under rule 12 (b) (6) of the Federal Rules of

Civil Procedure.[5] The defendants argued that the court had no subject matter jurisdiction to render a deficiency judgment because the FDIC had filed its motion more than thirty days after the expiration of the "time limited for redemption," as required by § 49-14 (a), namely, September 30, 1992, which was, in the defendants' view, the date on which title to the mortgaged property had become absolute in the FDIC.

Magistrate Judge Eagan made a recommended ruling to the District Court that: (1) the defendants' failure to object to the judgment of strict foreclosure of August 26, 1992, estopped them from arguing a lack of subject matter jurisdiction; (2) under equitable principles, the court had the power to extend the deadline for filing a motion for a deficiency judgment; and (3) the defendants had waived their right to object to such an extension. The defendants objected to the recommended ruling.

The District Court held that under Connecticut law: (1) the motion for a deficiency judgment was untimely

---

[5] Rule 12 of the Federal Rules of Civil Procedure provides in pertinent part: "(b) HOW PRESENTED. Every defense, in law or fact to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

under § 49-14 (a) because the thirty day time limit began to run on September 29, 1992; and (2) the time limit was subject matter jurisdictional and, therefore, could not be waived. Accordingly, the court denied the FDIC's motion for a deficiency judgment, and granted the defendants' objection to the recommended ruling and motion to dismiss. The FDIC appealed to the Court of Appeals, which certified the two questions of law to this court. See footnote 2.

The FDIC claims that the District Court improperly dismissed the motion for a deficiency judgment because: (1) the magistrate judge had the equitable power and discretion to establish November 1, 1992, as the date of vesting of title in the FDIC, and that, under Connecticut law, the owner's equity of redemption expires on the date set for vesting of title in the mortgagee, which is not necessarily the date of expiration of the law days ; and (2) in the alternative, the thirty day time limitation contained in § 49-14 (a) is not subject matter jurisdictional and, therefore, the defendants were properly held to have waived that time limit. The defendants respond that the District Court was correct because: (1) as a matter of Connecticut mortgage law, the thirty day time limitation began to run upon the passing of the final law day, and not on November 1, 1992; and (2) the thirty day time limitation in § 49-14 (a) is a limitation on the right created by the statute, and therefore a failure to file a motion for a deficiency judgment within that time period deprives the court of subject matter jurisdiction to grant such a motion.

We conclude that it is not necessary to decide the first certified question because, even if we were to assume that the thirty day time limitation in § 49-14 (a) expired before the filing of the motion for a deficiency judgment,[6] the time limitation is not subject matter

---

[6] We note the Appellate Court's recent holding that the thirty day time period provided in § 49-14 (a) is calculated from the last law day and not

jurisdictional. Therefore, even if we were to assume that the motion was untimely, the court retained subject matter jurisdiction to rule on it and, under the facts as certified to us, the defendants waived any objection to it on the basis of untimeliness.

The question of whether a statutory time limitation is subject matter jurisdictional is a question of statutory interpretation. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993). Thus, "we look to whether the legislature intended the time limitation to be jurisdictional. The legislative intent is to be discerned by reference to the language of the statute, its legislative history and surrounding circumstances, the policy the limitation was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter. [Id.] In light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar. Id., 765." (Internal quotation marks omitted.) *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 854, 633 A.2d 305 (1993).

We conclude that no such showing has been made in this case. The legislature did not intend that the thirty day time limitation for filing a motion for deficiency judgment, contained in § 49-14 (a), could not be waived by the parties in a particular case. This conclu-

---

from the day that title becomes absolute in the mortgagee. *First Federal Savings & Loan Assn. of Rochester* v. *Pellechia*, 37 Conn. App. 423, 656 A.2d 688 (1995). That case, however, addressed only the calculation of the time period under the usual factual setting of a strict foreclosure, where neither the parties nor the court contemplate a disconnection between the last law day and title becoming absolute in the mortgagee. Thus, it does not address the first question certified in this case, namely: (1) *"In the circumstances of this case,* when did the thirty day time limitation contained in General Statutes § 49-14 (a) begin to run?" (Emphasis added.)

sion is supported by the language of the statute, read in the light of its history and its jurisprudential background.

We begin with the language of § 49-14 (a): "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure *may* file a motion seeking a deficiency judgment. . . ." (Emphasis added.) The language is less emphatic than other statutory time limitations that we have held to be subject matter jurisdictional. See, e.g., *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission,* supra, 227 Conn. 849 n.2 ("General Statutes § 4-183 (c) provides: 'Within forty-five days after mailing of the final decision [of an administrative agency] under section 4-180 . . . a person appealing under this section *shall* . . . file the appeal with the clerk of the superior court . . . .' " [Emphasis added.]); *Ambroise* v. *William Raveis Real Estate, Inc.,* supra, 226 Conn. 759 n.1 ("General Statutes § 52-278*l* provides . . . (b) No such appeal [from certain prejudgment remedy orders] *shall be taken except within seven days* of the rendering of the order from which the appeal is taken. . . .' " [Emphasis added]). Nonetheless, although the language of § 49-14 (a) is less emphatic than other statutory language that we have determined to be jurisdictional, and although that lack of linguistic emphasis is suggestive of a nonjurisdictional purpose, the statutory language is not, by itself, determinative of such a purpose.

The legislative genealogy of § 49-14 (a), however, strongly supports our conclusion that its time limitation is not subject matter jurisdictional. Prior to 1833, our law did not provide for obtaining a deficiency judgment or its functional equivalent, because a judgment of strict foreclosure barred further action on the note. *Equitable Life Assurance Society of the United States* v. *Slade,* 122 Conn. 451, 454, 190 A. 616 (1937). Thus,

if the mortgagee extinguished the mortgagor's equity of redemption through a strict foreclosure and took possession of the property, the mortgagee was limited to the value of the property and any further remedy on the note was extinguished. Id.; *Derby Bank* v. *Landon*, 3 Conn. 62, 63 (1819).

In 1833, the legislature removed strict foreclosure as a bar to further action on the note, but provided that the court in the foreclosure action would ascertain the value of the property "at the expiration of the time limited for redemption," and that in the subsequent action on the note the mortgagee "shall recover only so much as his said claim or demand exceeds in amount the said value of said mortgaged property." Public Acts 1833, c. XVIII, as codified at General Statutes (1835 Rev.) tit. 30, c. 4; *Equitable Life Assurance Society of the United States* v. *Slade,* supra, 122 Conn. 454. In 1878, the legislature further amended the statute to shift the function of valuing the property from the court to three appraisers, and provided that the appraisers' value "shall be final and conclusive . . . ." Public Acts 1878, c. 129, § 2; *Equitable Life Assurance Society of the United States* v. *Slade,* supra, 455.

General Statutes (1902 Rev.) § 4124 eliminated the requirement of bringing a second action in order to obtain a deficiency judgment, but retained the finality of the appraisers' valuation of the property. *Equitable Life Assurance Society of the United States* v. *Slade,* supra, 122 Conn. 455. Section 4124 also provided, however, that the court could enter a deficiency judgment "at any time within ninety days after the time limited for redemption has expired. . . ." See General Statutes (1930 Rev.) § 5083; *Equitable Life Assurance Society of the United States* v. *Slade,* supra, 462.

In *Equitable Life Assurance Society of the United States*, the date for redemption had been October 8,

1935. The appraisers' report had been filed on October 16, 1935, but because the mortgagor objected to the report, the hearing on that objection was not concluded until February 14, 1936. Nonetheless, on March 24, 1936, more than ninety days after the date limited for redemption, the trial court rendered a supplemental judgment denying the mortgagee's request for a deficiency judgment because of the expiration of the ninety day time period. On appeal, this court reversed and remanded the case with direction to render a deficiency judgment for the mortgagee. Id., 465. We held that the ninety day time limitation for rendering a deficiency judgment was not subject matter jurisdictional. The court's "power to enter a deficiency judgment after the expiration of ninety days does not involve a question of jurisdiction, since a judgment entered after the expiration of the time limited by the statute though erroneous, is not void." Id., 462. This court declined, on appellate procedural grounds, to entertain the mortgagor's further, nonjurisdictional claim that the trial court had nevertheless properly declined to render the deficiency judgment. Id., 465.

The next year, however, this court revisited the statute under a similar set of facts but in a different procedural posture. In *Dime Savings Bank* v. *Pomeranz*, 123 Conn. 581, 196 A. 634 (1938), the date set for redemption was February 3, 1936, and on February 5, 1936, the mortgagee moved for a deficiency judgment. Because of hearings on the mortgagor's objections to the appraisers' report, however, it was not until May 12, 1936, ninety-eight days after the date limited for redemption, that the trial court rendered a supplemental judgment for a deficiency judgment. The mortgagor appealed. Id., 581–82. This court reaffirmed the principle that "a deficiency judgment rendered after the expiration of the ninety days allowed by the statute is not void for want of jurisdiction of the court to render

it." Id., 583. We also stated, however, "that unless the party against whom [the deficiency judgment] is rendered consents to its being entered or waives the objection it is erroneous." Id. Specifically analogizing the issue to the situation in which the trial court, after hearing a case, renders a judgment in a case beyond the time period limited by statute to do so, we held: "The Legislature having made a specific requirement as to the time within which a deficiency judgment under the procedure we have outlined shall be entered, in the absence of a waiver by the defendant of the right to object to the rendition of a judgment thereafter, we are not at liberty to set aside that requirement." Id.

Applying these principles to the facts of that case, we held that, although the trial court had had subject matter jurisdiction to render a deficiency judgment after the statutory ninety day period; id.; we could not "hold as a matter of law that the defendant had waived his right to object to the late entry of judgment." Id., 584. We pointed out that "[h]ad the plaintiff called the [ninety day] requirement of the statute to the attention of the trial court within that time, no doubt a decision would have been rendered, particularly as it was entered only eight days after the expiration of the period. Id. Accordingly, we reversed the judgment and remanded the case with direction to vacate the deficiency judgment. Id., 585. Thus, under *Dime Savings Bank*, the mortgagor could, by engendering hearings on the acceptance of the appraisers' report, delay the rendering of a deficiency judgment, and cast the burden on the mortgagee to ensure that, despite those proceedings, the court met the ninety day limitation.

The next year, in response to our decision in *Dime Savings Bank*,[7] the legislature amended the statute to

[7] Although there is no printed legislative history available for this statutory amendment, its passage so promptly after the decision in *Dime Sav-*

shift the time limitation from the court to the mortga-
gee. Public Acts 1939, c. 97. Under General Statutes
(1939 Sup.) § 1313e, the court was permitted to ren-
der a deficiency judgment "provided application for
such deficiency judgment shall have been made by the
plaintiff within ninety days after the time limited for
redemption has expired."

The statute remained essentially unchanged for the
next forty years. In 1979, this court held that General
Statutes (Rev. to 1977) § 49-14 was unconstitutional
because it failed to "comply with the procedural due
process of law requirements of the fourteenth amend-
ment to the United States constitution and article first,
§ 10, of the Connecticut constitution." *Society for Sav-
ings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 564–65,
409 A.2d 1020 (1979). The constitutional defect had
nothing to do, however, with the time limitation at issue
in this case. The constitutional defect was that, by lodg-
ing the valuation process for purposes of a deficiency
judgment solely with the court-appointed appraisers,
the statute deprived the defendant of proper notice and
of a meaningful opportunity to be heard on the vital
issue of the value of the property. Id., 572–77.

*Society for Savings* was decided on February 6, 1979.
In fewer than six weeks, the legislature had before it
proposed legislation to cure the defects identified by
the court in that case. On March 15, 1979, the Joint
Standing Committee on the Judiciary considered
Raised Committee Bills Nos. 7644 and 499, and a
revised version to be substituted for both of those bills.
Conn. Joint Standing Committee Hearings, Judiciary,
Pt. 2, 1979 Sess., pp. 539–52. The testimony before the
committee was to the general effect that the purpose
and effect of the bill were to provide a hearing for the

*ings Bank* v. *Pomeranz*, supra, 123 Conn. 581, compels the inference that
it was enacted in response to that decision.

establishment by the trial court of the value of mortgaged property, for purposes of a deficiency judgment proceeding, in order to bring the deficiency judgment statute into conformity with the constitution. Id. The testimony also indicated that the bill had the support of the Connecticut Bar Association, the Connecticut Bankers Association and the Mutual Savings Banks of Connecticut. Id., p. 542. The only mention in the bill, and the testimony, regarding the time limitation was to reduce the time for filing a motion for a deficiency judgment from ninety to thirty days after the date limited for redemption. Id.

On April 4, 1979, Substitute House Bill No. 7644, entitled "An Act Concerning Valuation of Mortgaged Property After Foreclosure," passed the House of Representatives after the following brief explanation: "What this bill does is set forth a procedure for determining deficiency judgments. In February of 1979, the Supreme Court declared the current procedure under our Foreclosure Statutes unconstitutional. This present piece of legislation would ensure a hearing before any deficiency is entered." 22 H.R. Proc., Pt. 7, 1979 Sess., p. 2294, remarks of Representative Alfred J. Onorato. Similarly, on April 24, 1979, the bill passed the Senate, after the following explanation: "This bill basically provides that there will be a hearing in regards to a deficiency judgment so that we can meet the conformity of the recent case involving this particular statute in which a part of the statute was ruled unconstitutional on the basis that there wasn't a proper hearing for anyone who is suffering a deficiency." 22 S. Proc., Pt. 5, 1979 Sess., p. 1557, remarks of Senator Salvatore C. DePiano. Substitute House Bill No. 7644 became No. 79-110 of the 1979 Public Acts. It is now codified at General Statutes § 49-14 (a), which contains the time limitation on the filing of a motion for a deficiency judgment that is at issue in this case.

We conclude from this legislative history that the thirty day time limitation in § 49-14 (a) was not intended by the legislature to be subject matter jurisdictional. The original ninety day statutory time limitation on the rendering of a deficiency judgment, enacted in 1902, was not subject matter jurisdictional. That principle was affirmed by case law in 1937 and reaffirmed in 1938. Although in 1939, in response to the decision in *Dime Savings Bank*, the time limitation was shifted from the court's rendering of the deficiency judgment to the plaintiff's filing of the motion seeking such a judgment, there is no reason to believe that this shift in locus of the time limitation was intended to contravene case law interpreting a statutory time limitation that had been in existence for thirty-seven years. Similarly, when, forty years later, in 1979, the legislature responded to *Society for Savings*, there was no indication that, in shortening the time limitation from ninety to thirty days, the legislature intended also to render subject matter jurisdictional a time limitation that had not been considered to be such for seventy-seven years. See, e.g., *Union Trust* v. *Heggelund*, 219 Conn. 620, 624–25, 594 A.2d 464 (1991) (when legislature amended prejudgment remedy statute to meet due process standards, no evidence of intent to change longstanding rule concerning priority of claims).

In light of the strong presumption in favor of jurisdiction, we require a strong showing of legislative intent that a time limitation acts as a subject matter jurisdictional bar. *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, supra, 227 Conn. 854. Such a strong showing is lacking here.

Our conclusion is further buttressed by the well settled doctrine that "[f]oreclosure is peculiarly an equitable action, and the court may entertain such questions as are necessary to be determined in order that com-

plete justice may be done." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966). We read statutes so that, together with the common law, they form a rational and coherent whole. *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 586, 657 A.2d 212 (1995); *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993). It would be inconsistent with these principles to hold the time limitation in § 49-14 (a) to be subject matter jurisdictional and thus nonwaivable by consent.

We recognize that, as the defendants argue, in other contexts we have held that where "a specific time limitation is contained within a statute that creates a right of action that did not exist at common law . . . the time limitation is a substantive and jurisdictional prerequisite, which may be raised at any time, even by the court sua sponte, and may not be waived." (Citations omitted.) *Ecker* v. *West Hartford*, 205 Conn. 219, 232, 530 A.2d 1056 (1987) (time limitation on bringing wrongful death action held jurisdictional); see also *Diamond National Corp.* v. *Dwelle*, 164 Conn. 540, 325 A.2d 259 (1973) (time limitation for bringing action for foreclosure of mechanic's lien held jurisdictional); *Simmons* v. *Holcomb*, 98 Conn. 770, 120 A. 510 (1923) (time limitation for bringing workers' compensation claim held jurisdictional); but see *L. G. DeFelice & Son, Inc.* v. *Wethersfield*, 167 Conn. 509, 356 A.2d 144 (1975) (time limitation on action for wrongful tax assessment held nonjurisdictional); *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 294 A.2d 633 (1972) (time limitation on right to challenge compensation for taking held nonjurisdictional).

That line of cases, however, is distinguishable. These cases, for the most part, involve time limitations, not only on the durational life of the particular cause of action, but on the time within which the party must institute an action in court, or, as in *Simmons* v. *Hol-*

*comb,* supra, 98 Conn. 770, before the proper quasi-judicial agency. Thus, they involve statutes that set time limitations for instituting the process of adjudication. Because "[s]ubject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong"; *Ambroise* v. *William Raveis Real Estate, Inc.,* supra, 226 Conn. 764–65; viewing a time limitation on the right to bring a case to court that did not exist at common law may, under appropriate circumstances, be considered a subject matter jurisdictional bar.

The time limitation contained in § 49-14 (a), however, is not within that category, even though the right to secure a deficiency judgment after a strict foreclosure was not recognized in our common law, and even though the deficiency judgment procedure is separate from but dependent on the common law, nonstatutory process of strict foreclosure. *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 176 Conn. 568. Unlike the cases in which we held the statutory time limitation to be jurisdictional, the § 49-14 (a) time limitation does not limit bringing the action to court in the first instance. The foreclosure action, of which the deficiency judgment procedure is simply a part, resulting in a supplemental judgment in the same case, is already before the court. Thus, the court already has subject matter jurisdiction over the action before it. In the absence of clear legislative indication, it would be cutting the notion of subject matter jurisdiction too finely to apply it, not to a separate statutory cause of action, but to a statutory procedure that is part of, and complementary to, the traditional and equitable common law action of strict foreclosure. Cf. *LeConche* v. *Elligers,* 215 Conn. 701, 709–15, 579 A.2d 1 (1990) (good faith certificate as prerequisite to medical malpractice action not subject matter jurisdictional).

This conclusion, that the thirty day time limitation in § 49-14 (a) is not subject matter jurisdictional, does not mean, however, that it can be ignored with impunity. The same legislative genealogy that teaches that it is not subject matter jurisdictional also teaches that it is analogous to General Statutes § 51-183b,[8] establishing a time limit within which a trial court must render a decision. Under § 49-14 (a), as under § 51-183b, if the mortgagee files an untimely motion for a deficiency judgment, it would be improper for the court to render such a judgment unless the mortgagor had, either expressly or by its conduct, consented thereto. *Dime Savings Bank* v. *Pomeranz*, supra, 123 Conn. 583; see *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 692, 577 A.2d 1047 (1990) ("[i]f a late judgment has been rendered and the parties fail to object seasonably, consent may be implied"); *Gordon* v. *Feldman*, 164 Conn. 554, 556–57, 325 A.2d 247 (1973); *Borden* v. *Westport*, 112 Conn. 152, 154, 151 A. 512 (1930); *Citicorp Mortgage, Inc.* v. *Tarro*, 37 Conn. App. 56, 59, 654 A.2d 1238 (1995) ("[u]nless the parties waive this time limitation, the trial court lacks jurisdiction to entertain a motion to open [a judgment] filed more than four months after a decision is rendered"). Thus, the time limitation in § 49-14 (a) is more properly considered to be mandatory, which means that it must be complied with absent waiver or consent by the parties, rather than subject matter jurisdictional, which would preclude any extension of time even by express waiver or consent.

---

[8] General Statutes § 51-183b provides: "JUDGMENTS IN CIVIL ACTIONS. TIME LIMIT. Any judge of the superior court and any state trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

In this case, the Court of Appeals certified to us that the strict foreclosure judgment of August 26, 1992, which specifically included the November 1, 1992 date for the beginning of the thirty day period under § 49-14 (a), had been approved by Magistrate Judge Eagan, and endorsed by the District Court on October 5, 1992, without objection from either party. On this record, therefore, the defendants must be considered as having consented to the filing of the motion for a deficiency judgment within thirty days of November 1, 1992.

The second certified question is answered: No. We need not answer the first certified question.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.