[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By Amended Petition dated October 31, 1995, the petitioner alleges that his confinement in the custody of the Commissioner of Corrections is unlawful on the basis of his claim that he was rendered the ineffective assistance of counsel in the underlying criminal proceedings. Based on the evidence adduced at the habeas hearing, the court makes the following findings and order.
Following a jury trial in the Superior Court, Judicial District of New London, the petitioner was convicted of two counts of Sexual Assault in the First Degree in violation of C.G.S. § 53a-70 and two counts of Risk of Injury in violation of C.G.S. § 53-21. On September 4, 1990 the petitioner was sentenced to twenty-five years incarceration, suspended after serving fifteen years. The petitioner is presently an inmate in the custody of the Commissioner serving the imposed sentence.
The petitioner's conviction was affirmed on direct appeal.State v. James L., 26 Conn. App. 81 (1991).
In the underlying criminal proceedings, the petitioner was represented at pretrial and trial by Attorney Richard Perry. In Docket Number CV 90-1095-S, the petitioner brought a habeas petition in the Tolland Judicial District in which he alleged that his confinement was unlawful on the basis of his claim that Attorney Perry's representation had been ineffective. On May 23, 1995, following an evidentiary hearing, the court (Sferrazza, J.) dismissed the petition.
After the petitioner had been convicted, he discharged his trial counsel and retained Attorney Kenneth Leary to represent him at sentencing and on appeal. In this petition, he alleges that Attorney Leary was ineffective for failing to file an CT Page 1505 application for review of his sentence with the Sentence Review Division of the Superior Court within the time period prescribed by law.
In his return to the petition, the Commissioner alleged that the petitioner has abused the writ of habeas corpus and/or otherwise procedurally defaulted the claim raised in this petition by failing to raise the claim in this petition in prior habeas corpus petitions he had filed in regard to these convictions. Thereafter, the respondent filed a Motion to Dismiss the Petition and a Motion for Summary Judgment. While taking judicial notice that the petitioner had filed prior habeas petitions and three petitions for a new trial, the court denied the respondent's Motion to Dismiss and Motion for Summary Judgment because this petition does not raise the same ground as the previous petitions as the term "grounds" was defined by the Supreme Court in Negron v. Warden, 180 Conn. 153 (1980), and in light of the court's express admonition in Mercer v.Commissioner, 230 Conn. 88 (1994) that there is a strong presumption that a habeas petitioner is entitled to present evidence in support of his claims.[1]
With respect to the petitioner's factual allegations, the court finds that on the same day as sentencing, though later in the day while the petitioner was in the court room, the clerk handed the petitioner a notice of a right to appeal, an application for waiver of fees, and a notice of the right to have his sentence reviewed. Petitioner's Exhibit 1, Sentencing Transcript, 19. The petitioner took these forms with him from the courtroom to his place of incarceration. That evening, having filled out the form concerning a waiver of fees and costs, but without filling out the form concerning sentence review, he placed all the forms in an envelope and mailed them to Attorney Leary. While Attorney Leary did file a timely appeal on behalf of the petitioner, he took no immediate action with respect to the unsigned sentence review form he received back from the petitioner. Nor did he attempt to learn from the petitioner why he had returned the sentence review application, and more particularly, whether the petitioner wished to have this avenue pursued.
While Attorney Leary could not recall actually discussing with the petitioner the question of whether an application for sentence review should be filed, the petitioner testified, and the court finds from the credible evidence, that no meaningful CT Page 1506 discussion of the subject of sentence review took place between Attorney Leary and him on the day of sentencing or at any time within thirty days thereafter.
The petitioner, who assumed that Attorney Leary had filed the application on his behalf, did not learn until after his appeal failed that an application for sentence review had not been filed. Thereafter, Attorney Leary attempted unsuccessfully to file a late application for sentence review on behalf of the petitioner.
At the habeas trial, the petitioner called Attorney Alexander Schwartz of the Bridgeport bar as an expert witness. Attorney Schwartz testified that it would be below the standard or norm for a reasonably competent criminal defense lawyer acting in the exercise of due care to fail to conduct a meaningful discussion concerning whether to file an application for sentence review with a client who has been sentenced to a period of confinement of three or more years. Attorney Schwartz posited that a meaningful discussion would be one in which counsel gives a client a sufficient factual basis so that the client is able to make a knowing decision. Such a basis, Attorney Schwartz opined, would include a discussion of whether the particular sentence imposed falls within the parameters of other sentences imposed for similar offenses, whether the sentencing judge has a particular history with the Sentence Review Division, and whether there are any unique facts which could be presented to the Sentence Review Division.
Attorney Schwartz further testified that a reasonably competent criminal defense lawyer acting in the exercise of due care, when faced with a client who manifests ambivalence about whether to file for sentence review, would file such a request in a timely manner, knowing that it could later be withdrawn if the client subsequently decided not to pursue it.
Finally, germane to the petitioner's circumstances, Attorney Schwartz testified that a reasonably competent criminal defense attorney acting in the exercise of due care, when confronted with receipt of an unsigned application for sentence review from his incarcerated client within the time period for filing such a petition, would ascertain the client's desires in a timely manner.
The petitioner's counsel, taking none of these steps, simply CT Page 1507 placed the unsigned application for sentence review in his file without further inquiry or action until well after the passage of thirty days.
As a general proposition, in order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668 (1984),Bunkley v. Commissioner, 222 Conn. 444 (1992), Copas v.Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that CT Page 1508 counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action' might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, as a general proposition, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland v. Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
The petitioner's entitlement to the effective assistance of counsel pertains to sentence review proceedings. The Supreme Court has stated: "A hearing before the review division, like the original imposition of sentence after ascertainment of guilt, constitutes a critical stage of the sentencing procedure. The plaintiff was entitled under the federal constitution to `the guiding hand of counsel' at that hearing. (internal citations omitted)" Consiglio v. Warden, 153 Conn. 673, 677 (1966). TheConsiglio court further opined: "The entire sentence review procedure is sufficiently a part of the original trial so that representation in sentence review proceedings, including any resentencing made necessary by the action of the review division, CT Page 1509 falls within the duty assumed by the attorney of record who represented the accused at the trial and the original sentencing.Id. 680.
This obligation pertains not only to advocacy at the sentence review hearing, but representation of a criminal defendant in regard to whether to pursue this avenue and preparation for the hearing itself. Attorney Leary's performance was deficient in this regard. The court finds that Attorney Leary had no meaningful conversation with the petitioner on the subject of sentence review. Indeed, while it is evident to the court from Attorney Leary's habeas testimony that he believed that the petitioner had done well at sentencing in light of his exposure to a substantially longer period of incarceration, there is no credible evidence Attorney Leary conveyed this advice, and the basis for it, to the petitioner. Counsel's assessment, even if founded, is no justification for a failure to conduct a meaningful discussion with one's client to enable the client to make an informed decision of whether to pursue sentence review. Moreover, in this case, it is clear that the petitioner mailed the application, albeit unsigned, to counsel within the requisite time period, and counsel, then in possession of the application, failed to ascertain the petitioner's purpose in mailing it to him.
Having satisfied the effectiveness prong of the Strickland
test, the next issue concerns the proper yardstick for measuring prejudice where counsel's failure has deprived the petitioner of his right to pursue sentence review in a timely manner. The Supreme Court has recognized that while the principles which underlie the requirement of showing prejudice are constant, different standards of prejudice apply to different types of claims regarding counsel's performance. Thus, in a situation in which defense counsel is burdened by an actual conflict of interest, a successful habeas petitioner need not establish actual prejudice. cf. Phillips v. Warden, 220 Conn. 112 (1991). Similarly, the Supreme Court has opined, in dicta, that where the prejudice claimed by a habeas petitioner is that he was deprived of the right to appeal because his appellate counsel failed to file a timely appeal, a prejudice standard requiring the petitioner to establish that his conviction is unreliable would be inappropriate. Bunkley v. Commissioner, 222 Conn. 444 (1992). In such a situation, the court concluded, prejudice would be established by the absence of the appeal. Since the Supreme Court has determined that the sentence review hearing is a critical CT Page 1510 stage of the sentencing process, a phase to which the right to counsel attaches, the court believes that the Supreme Court's assessment of the prejudice standard when counsel fails to file a timely appeal is applicable to the circumstance in which counsel fails to file a timely application for sentence review. The court concludes, therefore, that the petitioner has satisfied theStrickland prejudice prong.
The court's assessment is not completed by its determination that the petitioner has proven that counsel's performance was deficient and that the petitioner suffered resultant prejudice. There remains the consideration of whether the court has the authority to grant the relief the petitioner seeks. The petitioner has asked the court to restore his right to file an application for sentence review.
In considering this question the court has reviewed the following: determinations made by the Sentence Review Division that the time period established by statute implicates its subject matter jurisdiction; decisions by the habeas court, including the undersigned, restoring a petitioner's right to pursue sentence review after the expiration of the statutory time period; a willingness on the part of the Sentence Review Division to hear such late applications; recognition by the Appellate Court, without comment, that the habeas court has granted such relief; the nature of habeas corpus; and, the language, historical context, and legislative history of C.G.S. § 51-195, establishing the Sentence Review Division.
On more than one occasion, the Sentence Review Division has stated its view that C.G.S. § 51-195 implicates subject matter jurisdiction. In State v. Parillo, No. CR90-68439 (June 23, 1992) 1992 Ct. Sup. 6114, the Division opined: "The dispositive issue of this case is the failure of the petitioner to file his application for review within thirty days of his sentence as required by Connecticut General Statutes 51-195. `The Review Division is a statutory body and has only such jurisdiction as is conferred upon it by statute. There is no provision in the statute, or court rules, to permit late filing. Neither the sentencing court nor this Division, is authorized to enlarge the time for filing an application' (Citations omitted) State v. Zappone, 28 Conn. Sup. 196 (1968). Because the application for review was filed later than thirty days provided in Connecticut General Statutes 51-195, the division lacks jurisdiction to review and the petition is dismissed." In a CT Page 1511 similar situation, the Division stated: "The statutory provision requiring that the Application for Sentence Review be filed within thirty days from the date of sentence is mandatory. Statev. Morrissette, 29 Conn. Sup. 131, 133 (1971). The Sentence Review Division has no authority to enlarge or extend the period within which the Application for Review must be filed. . . . Since the petition was not filed within the time allowed by statute, this Division has no jurisdiction to review the petition." State v. Deslaurier. No. CR19-298671 (Nov. 20, 1995)1995 Ct. Sup. 12510-D. More recently, the Division has stated explicitly that the statutory requirement of filing within thirty days implicates subject matter jurisdiction. In State v. Walker,
No. CR4-129847 (February 27, 2996) 1996 Ct. Sup. 1286-A, the Division stated: "In reviewing the matter this panel finds that the failure to file application for review of sentence within thirty days of sentencing deprives the Division of subject matter jurisdiction." In reaching this conclusion, the court found that the thirty day limitation implicated subject matter jurisdiction on the basis that it was statutory, thus relying specifically on the Appellate Court's ruling in Iovieno v. Commissioner ofCorrections, 40 Conn. App. 553 (1996) that the habeas court does not have the jurisdiction to extend the statutory period of ten days which an unsuccessful habeas petitioner has to file a petition for certification to appeal an adverse habeas decision.Id.
However, when confronted with an order restoring a defendant's right to pursue sentence review, the Division has not invariably declined on the basis of subject matter jurisdiction. In State v. Shinkewicz, No. CR21-37097 (February 15, 1995), the Division heard a late application on the merits following restoration of the right to file by the habeas court where the petitioner had not been properly advised of his right to file an application for sentence review. In State v. Rouleau,
No. CR4-118139 (April 22, 1991), the Division heard a late application where the habeas court had restored a petitioner's right to file, and in State v. Fantasia, No. CR92-86574 (July 27, 1995), the Division heard a late application based on an order from the habeas court.
The Review Division's decision in State v. Crespo is illuminating for it's discussion of subject matter jurisdiction.42 Conn. Sup. 371 (1992). In Crespo, the Division declined to hear a late application for sentence review even though the late application flowed facially from a successful habeas petition. In CT Page 1512 this matter, Crespo had filed an earlier application for sentence review thirteen months after his sentence that was dismissed as untimely by the Division. Crespo then filed a habeas petition, and in the habeas matter the parties entered into a stipulation that the petitioner's right to apply for sentence review should be restored. The parties' stipulation contained the provision: "Upon the restoration of the right to have the sentence reviewed, the Petitioner hereby withdraws his application for a writ of habeas corpus, No. 91-1335, and agrees to a dismissal with prejudice." Id. 373. It is instructive to this court that in declining to hear the matter on the basis that it lacked subject matter jurisdiction, the Division stated: "In the present case, the habeas court did not make a determination that the petitioner's constitutional rights had been violated. Rather, the order to restore the petition to the division was based on the stipulation entered into by the state and the petitioner's counsel. A stipulated judgment is a contract between the parties and not an adjudication on the merits." Id. 375.
Thus, a review of Sentence Review Division decisions on this issue suggest that the Division will decline to hear a late application on the basis that it lacks subject matter jurisdiction except in a circumstance in which a habeas court has, on the basis of an actual adjudication, made a determination that a late filing, or the absence of a filing, was due to no fault of the applicant, and resulted from a deprivation of a constitutional right.
In addition to these matters, the court has determined that the habeas court has, on at least three other occasions not including once by the undersigned, ordered the restoration of a petitioner's sentence review rights. cf. Ranieri v. Warden,
No. CV93-1795 S (April 20, 1995, Sferrazza, J.); Rouillard v. Warden,
No. CV87-1943 (January 19, 1993, Fineberg, J.); and, Ostolaza v.Warden, (Kaplan, J.), 26 Conn. App. 758 (1992). It should be noted that in Ostolaza, while Judge Kaplan ordered a restoration of the petitioner's sentence review rights, the court dismissed the petition in all other respects. In affirming the trial court's decision, the Appellate Court noted, without comment, that the petitioner's sentence review rights had been restored. The court does not take the Appellate Court's acknowledgment of this occurrence as explicit approval.
The determination of the Sentence Review Division that it does not have the right to hear an untimely application on its CT Page 1513 own initiative but that it can hear a late-filed application when the right has been restored following adjudication by the habeas court is instructive, though not conclusive.
There question remains that if the Sentence Review Division lacks subject matter jurisdiction to hear a late application, whether a coordinate court may grant subject matter jurisdiction to the Division. This inquiry entails a two-fold consideration of whether the timing language in the legislation authorizing the Sentence Review Division implicates subject matter jurisdiction, and, if so, whether there are circumstances in which a habeas court, in the exercise of its constitutional function, can confer subject matter jurisdiction on the Division. The court answers both questions in the negative. This court does not believe that the timing language in C.G.S. § 51-195 is mandatory so as to implicate the subject matter jurisdiction of the Sentence Review Division to hear an untimely application. Additionally, this court believes that if the statutory timing language does implicate subject matter jurisdiction, then the habeas court is powerless to confer such jurisdiction on the Division.
The term "subject matter jurisdiction" refers to the rules that invest a particular court or other tribunal with authority to decide various kinds of legal controversies; it implicates the power of the court to adjudicate the type of controversy involved in the action. Restatement of the Law: Judgments 2d 2, 10. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Jurisdiction invokes the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." (internal citations omitted) State v. Piorkowski,37 Conn. App. 252 (1995). It is significant to this discussion that the court's power to decide a controversy is derived from the constitution and from statute, and that the court can not confer subject matter jurisdiction upon itself. cf. Colby v. Colby,33 Conn. App. 417 (1994). Thus, though the Superior Court is a constitutional court of general jurisdiction, it's power and jurisdiction is defined by law. Constitution, Art. 5, Sec. 1. The court concludes, therefore, that the Superior Court, on hearing a habeas petition, has no authority to vest subject matter jurisdiction in the Sentence Review Division of the Superior Court. CT Page 1514
The question of whether the statutes authorizing the Sentence Review Division and establishing procedures for the filing of applications for sentence review before it implicate subject matter jurisdiction requires an analysis of the language, history, and purpose of the legislation.
C.G.S. § 51-194 provides, in part, that, "The chief justice shall appoint three judges of the superior court to act as a review division of the court and shall designate one of the judges to act as chairman thereof." C.G.S. § 51-195 states, in pertinent part, "Any person sentenced on one or more counts of an information to term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date suchsentence was imposed or if the offender received a suspendedsentence with a maximum confinement of three years or more withinthirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division." (underlining added).
The issue at hand is whether the time limitation of thirty days implicates the subject matter jurisdiction of the Division.
As a general statement of law, the Superior Court, as a court of general jurisdiction, is presumed to have jurisdiction. cf.Sheff v. O'Neill, 238 Conn. 1 (1996); Figueroa v. C And S BallBearing, 237 Conn. 1 (1996); Federal Deposit Ins. v. HillcrestAssoc., 233 Conn. 153 (1995). When a statute contains a time limitation, the court looks to whether the legislature intended the time limitation to be jurisdiction by, ". . . reference to the language of the statute, its legislative history and surrounding circumstances, the policy the limitation was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter." Id. 163. The Court in Hillcrest further stated that, "In light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject CT Page 1515 matter jurisdictional bar." Id.
The Supreme Court has previously reviewed the purpose and historical context of the Sentence Review Act. cf. State v.Nardini, 187 Conn. 109 (1982). Noting that the Sentence Review Act was passed in response to prison unrest and prisoner complaints alleging the inequitable distribution of penalties imposed on similar offenders for similar offenses and the unavailability of any practicable avenue for review, the court observed: "The purpose and effect of the Sentence Review Act is to afford a convicted person a limited appeal for reconsideration of his sentence . . . It thus gives him an optional de novo hearing as to the punishment to be imposed . . . It meets the complaints that gave birth to the Sentence Review Act by providing a judicial body with discretionary authority to review prison sentences." Id. 118-121.
In 1971, the Supreme Court, in discussing the Sentence Review Act, noted that the Governor's Prison Study Commission, in its report dated November 19, 1956, recommended the establishment of the sentence review procedure to enable the offender to "enter the crucial first stage of prison life with at least one less grievance and with a feeling that his sentence does not represent the bias and prejudice of a single judge." State v. Delgado,161 Conn. 536, 551. Further commenting on the nature and purpose of the Sentence Review Act, the Supreme Court later opined: "The Sentence Review Division of the Superior Court was created by statute in 1957 pursuant to the recommendation of a special committee appointed by the Governor to study causes of prison unrest. The committee reported that the morale of many inmates, and consequently their desire for rehabilitation, is compromised by the belief that there is statewide inequality in the sentences imposed by different judges for the same crime First Interim Report of the Governor's Prison Study Committee (Nov. 19, 1956), Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 2, 1957, Sess., p. 377, on House Bill No. 276. The committee concluded that `[a]s long as a prisoner feels that he has been denied review of a sentence which he deems unfair or unduly harsh he remains a source of trouble in the prison system and efforts toward rehabilitation are seriously impeded.' Id." Staples v. Palten, 214 Conn. 195, 201 (1990). The court concludes from a review of the purpose and historic context of the passage of the Sentence Review Act, that the time limitation set forth in the legislation is not fundamental to its purpose. CT Page 1516
This view is buttressed by reference to the wording of the time limiting language in the statute. The act does not state that an offender "must" or "shall" file an application within thirty days, but that such a person "may, within thirty days from the date. . . . file. . . . an application for review of the sentence by the review division." C.G.S. § 51-195. The Supreme Court conducted a similar analysis in Federal DepositIns. v. Hillcrest Assoc. in determining whether C.G.S. § 49-14
(a), containing a thirty day time limitation for filing a motion for deficiency judgement implicated subject matter jurisdiction that could not be waived by the parties. The court commented: "We begin with the language of 49-14 (a); `At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. . . .' The language is less emphatic than other statutory time limitations that we have held to be subject matter jurisdictional. See, e.g., Glastonbury Volunteer Ambulance Assn., Inc. v. Freedom of Information Commission, supra, 227 Conn. 849 n. 2 ("General Statutes 4-183
(c) provides; `Within forty five days after mailing of the final decision [of an administrative agency] under section 4-180. . . a person appealing under this section shall . . . file the appeal with the clerk of the superior court. . . .'"; Ambroise v. William Raveis Real Estate, Inc., supra, 226 Conn. 759 n. 1 ("General Statutes 52-278l provides . . . (b) No such appeal [from certain prejudgment remedy orders] shall be taken except within seven days of the rendering of the order from which the appeal is taken. . . .)'" 233 Conn. 153. 163 (1995).
Given the historical context and remedial purpose of the Sentence Review Act, together with the specific language of the statute, the court concludes that the time limitation provision in C.G.S. § 51-195 is not subject matter jurisdictional.[2]
The respondent's claim that the outcome of this issue is determined by the holding of the Supreme Court in Iovieno v.Commissioner of Correction is unavailing. In Iovieno, the court held that the language of C.G.S. § 52-470 that "no appeal from the judgment rendered in a habeas corpus proceeding . . . may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies" is CT Page 1517 mandatory, and that the habeas court lacked discretion to grant certification upon an application filed beyond the mandatory ten day period. 222 Conn. 254 (1992). Since a determination of whether the time limitation language in a particular statute implicates subject matter jurisdiction requires analysis of the wording, purpose, and legislative history of the statute in question, the court's finding in Iovieno that the time limitation language in C.G.S. § 52-470 (b) is mandatory does not compel this court to a similar determination regarding the time limitation set forth in the Sentence Review Act.
Having determined that the time limitation language of C.G.S § 51-195 is not mandatory so as to implicate subject matter jurisdiction, the question remains whether this court, in response to a habeas petition, has the authority to order the restoration of a petitioner's right to file an application for sentence review. The habeas court has the power to dispose of a habeas petition "as law and justice require." C.G.S. § 52-470. It has been often stated that in discharging its responsibility, the habeas court "has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established." Gaines v. Manson, 194 Conn. 510, 528 (1984). The habeas court is also vested with the authority to "remedy fundamental miscarriages of justice". Medley v. Commissioner,235 Conn. 413 (1995). Here, although the petitioner has no constitutional right to a review of his sentence, he has the constitutional right to the effective assistance of counsel in the exercise of his statutory right to seek sentence review. cf.Consiglio v. Warden, supra, 153 Conn. 673. Where the state has created the right to pursue sentence review, the procedures relating to the filing and pursuit of the application must conform to due process, including the right to have competent counsel pursue the application. cf. State v. Phidd,42 Conn. App. 17 (1996).[3]
For the reasons stated, the petitioner's right to apply to the Sentence Review Division for review of his sentence is granted. The time period for filing such application commences on the date of the filing of this Memorandum.
Bishop, J.