AMERICAN MORTGAGE CORPORATION *v.*
IRENE HOPE
(13604)

Schaller, Spear and Hennessy, Js.

Submitted on briefs December 14, 1995—officially released May 14, 1996

*Jeffrey A. McChristian* filed a brief for the appellant-appellee (plaintiff).

*Theodore A. Lubinsky* filed a brief for the appellee-appellant (defendant).

SPEAR, J. The principal issue in this case is whether, in determining the amount of the defendant mortgagor's debt for inclusion in his bankruptcy plan under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301 et seq., the trial court should have included, as

part of the debt, certain expenses incurred by the plaintiff second mortgagee after title vested in it pursuant to a judgment of strict foreclosure. Those claimed expenses are the realtor's commission on the sale of the property, conveyance taxes, and recording fees (sale expenses) as well as interest on the first mortgage from the payoff date through the date on which the plaintiff sold the foreclosed property (interest expense). The second issue is whether the trial court improperly refused to award additional attorney's fees that the plaintiff claims it incurred because of the bankruptcy proceedings.

The plaintiff appeals from that part of the judgment disallowing the sale expenses and additional attorney's fees and the defendant cross appeals from that part of the judgment allowing the interest expense. We affirm the trial court's judgment with respect to the sale expenses and the denial of additional attorney's fees. We reverse the judgment with respect to the interest expense.

There is no dispute as to the relevant facts. On April 4, 1990, the defendant executed a promissory note in the amount of $30,000 payable to the plaintiff and secured by second mortgages on two separate parcels located in Berlin and New Britain respectively. Upon default in payment, the plaintiff commenced separate foreclosure actions on the properties. The court rendered a judgment of strict foreclosure as to the Berlin property and title vested in the plaintiff on November 2, 1991. On December 17, 1991, the plaintiff paid off the first mortgage. On February 13, 1992, the plaintiff sold the Berlin property for $109,900. The court rendered a judgment of foreclosure by sale in the New Britain action, but the sale was stayed because the defendant filed a petition in bankruptcy on November 16, 1991.

In the bankruptcy court, the defendant agreed to pay the amount that the Superior Court found to be due to the plaintiff. The bankruptcy court ordered a relief from stay in the New Britain foreclosure "for the limited purpose of determining the debt due [the plaintiff] for inclusion in the debtor's chapter 13 plan." In finding the debt, the trial court disallowed the realtor's sale commission in the amount of $6594, recording fees and conveyance taxes of $680.39, as well as the plaintiff's request for additional attorney's fees. The court did allow interest in the amount of $2009.12, computed from the date on which the plaintiff paid off the first mortgage to the date on which the plaintiff sold the property.

The proceeding in the Superior Court, pursuant to the relief from stay, was not a deficiency judgment hearing pursuant to General Statutes § 49-14.[1] The trial court fashioned a mechanism to determine the amount of the debt pursuant to the relief from stay order. That mechanism utilized the deficiency formula of § 49-14 with respect to the sale expenses, but not the interest expense. The parties disagree as to whether the fair market value of the property should be reduced by the sale and interest expenses, before applying that value toward the debt. The defendant advocates incorporating the deficiency formula of § 49-14 so that the full fair market value of the property would be credited

[1] General Statutes § 49-14 provides in pertinent part: "Deficiency judgment. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment. . . ."

toward the debt with that value being reduced by only the amount of the first mortgage and back taxes. The plaintiff asserts that, in addition to the balance on the first mortgage, its expenses relating to the sale as well as the interest on the first mortgage payoff should be deducted from the fair market value of the property and the resulting net value applied toward the debt. The trial court, in allowing the interest expense, but disallowing the sale expenses, calculated the debt to be $9228.68.

The plaintiff argues that the trial court should have adopted the procedure set out in the Uniform Commercial Code, General Statutes § 42a-9-504,[2] that allows a creditor to deduct expenses and to apply the net value of the collateral toward the debt. The fallacy in this argument is that § 42a-9-504 governs a situation where a secured party takes possession of collateral after a default, but does not take title. The secured party claiming the benefit of § 42a-9-504 does not own the collateral at the time of sale, but possesses it only for the purpose of the sale and the consequent satisfaction of the debt in whole or in part. If the secured party wants to become the owner of the collateral, the procedure in General

[2] General Statutes § 42a-9-504 provides in pertinent part: "Secured party's right to dispose of collateral after default; effect of disposition. (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to article 2. The proceeds of disposition shall be applied in the order following to (a) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party; (b) the satisfaction of indebtedness secured by the security interest under which the disposition is made; (c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand. . . ."

Statutes § 42a-9-505 (2)[3] must be followed. Even then, the secured party cannot obtain title if there is a timely objection. The plaintiff points to nothing in the Uniform Commercial Code that would allow a secured party, who takes title to the collateral, to sell it thereafter and to add the expenses of the sale to the obligor's debt.

We agree with the defendant that the deficiency judgment formula is properly used in determining the amount of the debt in this situation. "[F]oreclosure is peculiarly an equitable action, and the court may entertain such questions as are necessary to be determined in order that complete justice may be done." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 170–71, 659 A.2d 138 (1995). "[T]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Bombero*, 37 Conn. App. 764, 773, 657 A.2d 668, cert. granted, 234 Conn. 908, 659 A.2d 1208 (1995). The formula in § 49-14 accurately determines the remaining debt after a strict foreclosure and it is fair and equitable to apply it here. Pursuant to § 49-14, the value of the property foreclosed is fixed as of the date title vests in

---

[3] General Statutes § 42a-9-505 (2) provides: "In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. In the case of consumer goods no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received, before sending his notice to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 42a-9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation."

the foreclosing plaintiff for purposes of any deficiency.[4] *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 445, 582 A.2d 182 (1990); *Farmers & Mechanics Savings Bank* v. *Durham Realty, Inc.*, 34 Conn. App. 204, 207, 640 A.2d 1017 (1994). The value of the property is reduced by any prior encumbrances and back taxes. "Although § 49-14 is silent as to the deduction of prior encumbrances from the appraised value, it is well settled that the court should deduct from the amount of the appraisal the aggregate of *prior* claims against the property in order to determine the value of the security and hence the extent to which the debt or obligation has been satisfied by the application to it of the foreclosed property." (Emphasis added.) *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 461–62, 217 A.2d 694 (1966). For example, if the property is worth $100,000 as of the date title vests and there is a first mortgage with a balance of $69,000 and back taxes of $1000, a foreclosing second mortgagee whose debt totals $30,000 would be completely satisfied. The $30,000 difference between the balance of the first mortgage plus back taxes ($70,000) and the fair market value of the property ($100,000) is the equivalent of a cash payment to the foreclosing mortgagee. This procedure is fair to the mortgagee and the mortgagor. The mortgagor receives a full credit for any market value above the prior encumbrances, while the foreclosing second mortgagee receives a credit for the prior encumbrances (first mortgage and back taxes) that burden the property at the time that title vests.

---

[4] The court and the parties used the sale price of $109,900 as the fair market value of the property as of the date title vested. There was no objection to this procedure. "[A] recent sale of the subject realty resulting from fair negotiations between a desirous buyer and a willing seller . . . will ordinarily be the most reliable indicator of fair market value . . . ." (Internal quotation marks omitted.) *A & M Realty* v. *Dahms*, 217 Conn. 95, 100–101, 584 A.2d 466 (1991); see also *New Haven Savings Bank* v. *West Haven Sound Development*, 190 Conn. 60, 71, 459 A.2d 999 (1983).

The expenses incurred in the sale of the property after the plaintiff acquired title are not prior claims against the property and, therefore, are precluded pursuant to *Lenczyk*. "Were this not so, there would be no finality to the finding of value based on the day title vested in the plaintiff. Changes in value, changed market conditions, improvements or newly discovered deficiencies in the property are only a few examples of the plethora of issues that might be raised were the rule not as it exists." *City Savings Bank of Bridgeport* v. *Miko*, 1 Conn. App. 30, 34, 467 A.2d 929 (1983).

Two principles emerge from the cases addressing this issue. First, the value of the property is determined as of the date title vests. Second, the only allowable deductions from that value are for prior encumbrances in effect on the date title vests. If the value of the foreclosed property is equal to, or in excess of, the value of the senior encumbrances plus the debt of the foreclosing property, no deficiency exists. The debt would be completely extinguished and there would be no legal basis for allowing the foreclosing plaintiff, in whom title has vested, to sell the property thereafter and create a new debt by charging the sale expenses to the defendant mortgagor. Clearly, expenses related to the sale of the foreclosed property after the foreclosing party acquires title cannot *increase* the debt of the mortgagor.

This reasoning also disposes of the issue of the $2009.12 interest expense that the trial court allowed. Only the balance on the first mortgage as of the date title vested is properly deductible from the fair market value of the property.[5] Furthermore, the postvesting payoff protected the plaintiff's interest from any

[5] The defendant does not challenge the payoff figure of $74,368.62 as of December 17, 1991, even though this figure presumably includes interest that accrued after title vested.

adverse action by the senior mortgagee. As a matter of equity, the loss of interest on the money used to pay off the first mortgage for the time period between the date of the payoff and the date the property was sold is not an expense to be paid by the mortgagor but is rather an expense that is properly chargeable to the plaintiff.

The plaintiff last claims that the trial court improperly denied additional attorney's fees for the bankruptcy and debt determination proceedings. " 'Whether to allow [attorney's] fees and in what amount calls for the exercise of judicial discretion.' " *Clement* v. *Clement*, 34 Conn. App. 641, 649, 643 A.2d 874 (1994); see also *Cook* v. *Bieluch*, 32 Conn. App. 537, 544, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993). The memorandum of decision indicates that the trial court had previously awarded the plaintiff attorney's fees in the amount of $1500 in the New Britain action. The memorandum indicates in a footnote that fees in the amount of $1700 were awarded in the Berlin action, but the defendant states in her brief that only $1300 was awarded as attorney's fees. The plaintiff does not state what fees were awarded in the Berlin action. The trial court did not give any reason for the denial of additional fees and the plaintiff did not request an articulation. There was no evidentiary hearing, according to the plaintiff's brief, and we do not know what amount was requested and what, if any, evidence or documentation was presented in support of the request. Because the record is insufficient to afford review, we cannot determine whether the trial court abused its discretion in refusing to award additional attorney's fees.

On the defendant's cross appeal, the judgment is reversed as to the allowance of $2009.12 in interest as part of the debt and the case is remanded with direction

to find the debt in the amount of $7219.56;[6] the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[6] This figure represents the debt found by the trial court in the amount of $9228.68 less the disallowed sum of $2009.12.