BRIAN E. MCKEEVER *v.* PHILIP FIORE, SR., ET AL.
(AC 23155)

Schaller, McLachlan and Peters, Js.

Argued May 27—officially released August 19, 2003

*Martin B. Burke*, for the appellant-cross appellee (plaintiff).

*Christopher G. Winans*, for the appellees-cross appellants (named defendant et al.).

*Opinion*

McLACHLAN, J. In this appeal from the judgment of strict foreclosure[1] rendered in favor of the plaintiff, Brian E. McKeever, the plaintiff claims that the trial court (1) improperly invoked and applied its equitable powers in considering the doctrine of unclean hands, (2) abused its discretion in limiting the award of interest on the debt to a one year period, (3) abused its discretion in limiting attorney's fees and (4) improperly disallowed late charges on the debt. On cross appeal, the defendants, Philip Fiore, Sr., and Mattea Fiore,[2] contend that the court improperly held that the plaintiff did not have to plead or to prove that General Statutes § 52-592, the accidental failure of suit statute, was applicable to his action. We affirm the judgment of the trial court as to the plaintiff's first three claims and as to the defendants' cross appeal. We reverse the judgment as to the plaintiff's fourth claim regarding the disallowance of late charges.

The court's memorandum of decision and the record reveal the following undisputed facts. On August 16, 1989, the plaintiff sold and conveyed title to property at 12-14 School Street in Vernon to Felice Fiore and Ronald S. Cook for $355,000. Fiore and Cook were doing business as Elite Investing (Elite). The purchase price was paid by a first mortgage in the amount of $255,000 and a second mortgage from Elite for $100,000. In addition, the defendants executed and delivered a guarantee of Elite's obligations under the second mortgage through a note and mortgage on property they owned at 31-33 Smith Street in Danbury (Danbury mortgage).

---

[1] As the trial court's memorandum of decision states, the relief sought at trial was to fix the amount of the debt, including interest, late payment and attorney's fees, on the mortgage of the real property at issue.

[2] Felice Fiore and Ronald S. Cook also were named as defendants, but the action was withdrawn as against them following their respective bankruptcy filings. We therefore refer in this opinion to Philip Fiore, Sr., and Mattea Fiore as the defendants.

The Danbury mortgage provided for interest accruing at 13 percent per annum beginning on August 16, 1989, with no payment due until September 1, 1992. The note also provided that if any payment was not made within fifteen days after it became due, a late charge of 5 percent of the overdue payment became payable. The amount of the debt on the note secured by the Danbury mortgage as of August 16, 1992, was therefore $139,000, which was $100,000 in principal plus three years interest at 13 percent.

Commencing September 1, 1992, Elite was required to make monthly payments of interest only in the amount of $1083.33 until the date of the maturity of the loan, August 16, 1994. When Elite did not make any of the interest payments, the plaintiff declared the loan to be in default by initiating foreclosure proceedings on February 16, 1993. On April 23, 1993, Elite paid $105,000 in exchange for a release of the mortgage on the Vernon property. No release of the Danbury mortgage was provided, nor was that note endorsed as paid in full.

The meandering procedural history of this litigation begins with the plaintiff's first foreclosure proceeding. The foreclosure action of February, 1993 was dismissed with prejudice on September 19, 1997, by the court when the plaintiff failed to appear for trial. The dismissal was vacated, and the matter was reassigned for trial on January 20, 1999. Again, the plaintiff failed to appear. The case was again dismissed with prejudice. The plaintiff sought unsuccessfully to vacate the second dismissal.

The plaintiff then instituted this foreclosure proceeding on June 24, 1999. The plaintiff asserted at trial that the action was brought under § 52-592, the accidental failure of suit statute, although the statute was not pleaded in the plaintiff's complaint.

On December 22, 1999, the defendants filed their answer and special defenses. On November 13, 2000, the defendants filed a request for leave to amend their answer, seeking to add the doctrine of unclean hands and the statute of limitations as special defenses. The court denied that request on February 21, 2001.

Finally, more than eight years after the plaintiff commenced the initial foreclosure action, this case came to trial. The court, in its memorandum of decision, ruled in favor of the plaintiff, finding a debt of $47,790.60. Citing its equitable powers, the court limited the plaintiff's award of interest to one year and awarded attorney's fees in the amount of $4200, although the plaintiff had claimed $26,450. Though late charges were provided for in the note, the court denied all late charges. On May 13, 2002, the court rendered judgment of strict foreclosure.[3] These appeals followed.

I

The plaintiff's first claim on appeal is that the court improperly invoked its equitable powers in its financial award because the doctrine of unclean hands was not pleaded as a special defense by the defendants. In addition, the plaintiff argues that even if the court could consider the doctrine, it abused its discretion by finding the doctrine applicable to the facts of this case. We disagree.

A

Whether the court properly invoked the doctrine of unclean hands is a legal question distinct from the court's discretionary decision as to whether to apply the doctrine. *Thompson* v. *Orcutt*, 257 Conn. 301, 308, 777 A.2d 670 (2001). The question whether the clean hands doctrine may be applied to the facts found by

---

[3] We note that the court awarded the plaintiff $2389.53 in additional interest and $500 in additional attorney's fees as well as $400 for the appraisal fee.

the court is a question of law. Id., 309. We must therefore engage in a plenary review to determine whether the court's conclusions were legally and logically correct and whether they are supported by the facts appearing in the record. See id.; *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 511, 767 A.2d 692 (2001).

An action of foreclosure is peculiarly an equitable action. *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 170, 659 A.2d 138 (1995); *Beach* v. *Isacs*, 105 Conn. 169, 176, 134 A. 787 (1926). Hence, the court may consider all relevant circumstances to ensure that complete justice is done. *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966).

"[T]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 162, 622 A.2d 536 (1993). Discretion means "a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Hammerberg* v. *Leinert*, 132 Conn. 596, 604–605, 46 A.2d 420 (1946). "For that reason, equitable remedies are not bound by formula but are molded to the needs of justice." *Montanaro Bros. Builders, Inc.* v. *Snow*, 4 Conn. App. 46, 54, 492 A.2d 223 (1985).

In its memorandum of decision, the court mistakenly mentioned, in a footnote, that the defendants had raised the doctrine of unclean hands as a special defense. The record reveals that the defendants had filed a request for leave to amend their answer so as to include that defense, but the court did not allow the amendment. On the basis solely of that footnote and without providing any further support for his claim, the plaintiff con-

tends that the court improperly and erroneously considered the doctrine of unclean hands. We disagree.

Our Supreme Court has insisted that equity must look to substance and not mere form. *Bender* v. *Bender*, 258 Conn. 733, 751, 785 A.2d 197 (2001); *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 397, 216 A.2d 814 (1966). "A failure to do equity need not be pleaded by defendant where the pleading on behalf of plaintiff or the proof discloses the inequitable position of plaintiff . . . ." 30A C.J.S. 298, Equity § 96 (1992). We therefore conclude that in light of the court's inherent equitable powers in a foreclosure action, the court did not improperly consider the equitable doctrine of unclean hands without it being specifically pleaded.

### B

The plaintiff next argues that even if the court could consider the doctrine of unclean hands, it improperly concluded that the doctrine was applicable to the facts of this case. We disagree.

The doctrine of unclean hands holds that one who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. *Cohen* v. *Cohen*, 182 Conn. 193, 201, 438 A.2d 55 (1980); *Sachs* v. *Sachs*, 22 Conn. App. 410, 416, 578 A.2d 649, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990). It expresses the principle that when a plaintiff seeks equitable relief, "he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 525, 686 A.2d 481 (1996).

Here, the proceeding was a foreclosure action that was equitable in nature. The plaintiff sought interest for a period of nine years, attorney's fees and late charges. The court had ample evidence to determine in its memorandum of decision that a period of one

year "is more than sufficient to try a case of this nature to a conclusion." The court had evidence before it that equitable principles warranted a reduction in the amount that the plaintiff was entitled to recover due to the plaintiff's failure to appear twice for trial, the nine year prosecution of the action and the potential for a windfall. We conclude that the court's application of the doctrine of unclean hands was legally and logically correct and was supported by the facts appearing in the record.

## II

The plaintiff next claims that the court abused its discretion in the manner in which it applied the doctrine of unclean hands by limiting the award of interest to a one year period. In the plaintiff's proposed findings of fact submitted to the court on October 9, 2001, he sought $113,280.11 in interest. The court awarded him $50,180.21.

The application of the doctrine of unclean hands rests within the sound discretion of the trial court. *Thompson* v. *Orcutt*, supra, 257 Conn. 308. When the exercise of judicial discretion is called on, its exercise will not ordinarily be interfered with on appeal. *Sturman* v. *Socha*, 191 Conn. 1, 7, 463 A.2d 527 (1983). We are entitled to reverse the court's exercise of its equitable powers only if that exercise was unreasonable. *Connecticut Bank & Trust Co.* v. *Winters*, supra, 225 Conn. 161. Consequently, when we review the exercise of discretion by the trial court, every reasonable presumption will be given in favor of the correctness of its ruling. *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 (1970).

The record reveals that the litigation was prolonged in substantial part by the conduct of the plaintiff. The court was understandably "troubled by the extreme lack of diligence in the prosecution of this foreclosure proceeding to a conclusion," including the two dismiss-

als with prejudice. The court held that a period of one year "is more than sufficient to try a case of this nature to a conclusion."

"Equity will not afford its aid to one who by his conduct or neglect has put the other party in a situation in which it would be inequitable to place him." *Glotzer* v. *Keyes*, 125 Conn. 227, 231–32, 5 A.2d 1 (1939). Were the defendants forced to pay almost a decade of interest as the plaintiff urges, it would amount to a windfall to him. See *Thompson* v. *Orcutt*, 70 Conn. App. 427, 435, 800 A.2d 530, cert. denied, 261 Conn. 917, 806 A.2d 1058 (2002). Accordingly, we conclude that the court did not abuse its discretion in applying the doctrine of unclean hands to limit the award of interest to a one year period.

## III

The plaintiff next contends that the court abused its discretion in limiting the award of attorney's fees. We disagree. The plaintiff requested $26,450 in attorney's fees, but the court awarded $4200 through trial.[4]

Attorney's fees in foreclosure actions are within the court's equitable discretion and are subject to the control of the court, which may, sua sponte, reduce the amount at its discretion or after a hearing if an adverse party contests their validity or reasonableness.[5] See 55 Am. Jur. 2d, Mortgages § 708 (1996); see also *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 77–78, 689 A.2d 1097 (1997); *American Mortgage Corp.* v. *Hope*, 41 Conn. App. 324, 332, 675 A.2d 912 (1996).

In its memorandum of decision, the court stated that it was "seriously troubled by the extreme lack of diligence in the prosecution of this foreclosure proceeding to a conclusion . . . . Such a lack of diligence is outra-

---

[4] See footnote 3.

[5] In his brief, the plaintiff acknowledges that attorney's fees in equitable actions are discretionary with the court.

geous and cannot be tolerated." The attorney's fees at issue were accumulated over a nine year period by three separate counsel. Two of those attorneys failed to appear on dates assigned for trial, causing dismissals of the first action, with prejudice, by two different judges. At trial, both attorneys admitted responsibility for the dismissals.

The record, therefore, supports the court's conclusion that in this case, equitable principles warranted a reduction in the amount that the plaintiff was entitled to recover. The reasonableness of an award of attorney's fees may be determined "by the exercise of the trier's own expert judgment." *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 246, 440 A.2d 306 (1982). Accordingly, we conclude that the court did not abuse its discretion in awarding attorney's fees.

IV

The plaintiff's final claim is that the court improperly denied an award of late charges as specifically called for by the Danbury mortgage note. We agree with the plaintiff.

A late charge is allowable under state law. See *Hamm* v. *Taylor*, 180 Conn. 491, 493–94, 429 A.2d 946 (1980) (reversing trial court disallowance of 10 percent late charge). Indeed, late charges are routinely awarded. See, e.g., *Mechanics Savings Bank* v. *Tucker*, 178 Conn. 640, 646, 425 A.2d 124 (1979); *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 17, 807 A.2d 991 (2002).

Late charges are contractual items. They compensate a lender for the extra time and effort expended as a result of a borrower's tardiness in making payments and, thus, are an attempt to provide for liquidated damages. See *Putnam Park Associates* v. *Fahnestock & Co.*, supra, 73 Conn. App. 16–17; see also 22 Am. Jur. 2d

773, Damages § 717 (1988). As a promissory note "is nothing more than a written contract for the payment of money"; *Appliances, Inc.* v. *Yost*, 181 Conn. 207, 210, 435 A.2d 1 (1980); contract law must govern. *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 574, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998). For that reason, as stated in *Putnam Park Associates* v. *Fahnestock & Co.*, supra, 16–17, late charges are "an integral part" of an agreement such as the one at issue. If no award to reflect those liquidated damages were permitted, the plaintiff "would not be made whole." Id., 17.

That general rule regarding late charges is subject to an exception. Liquidated damage claims that are excessive and do not bear a reasonable relationship to the actual damages sustained will be rendered void as a penalty. *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.*, 153 Conn. 681, 689–90, 220 A.2d 263 (1966); *New York Life Ins. Co.* v. *Hartford National Bank & Trust Co.*, 2 Conn. App. 279, 280–81, 477 A.2d 1033 (1984).

Here, the note provided that in the event that any payment was not made within fifteen days after it became due, a late charge of 5 percent of the overdue payment would become payable. In its memorandum of decision, the court deemed that late charge a penalty and thereby disallowed any late charges whatsoever, citing its "equitable powers." We disagree with that determination.

The equitable powers of the court are broad, but they are not without limit. "Equitable power must be exercised equitably." *Hamm* v. *Taylor*, supra, 180 Conn. 497. The late charge as provided in the note is clearly reasonable. Indeed, this court repeatedly has affirmed awards of late charges at this precise rate. See, e.g., *Berkeley Federal Bank & Trust, FSB* v. *Ogalin*, 48 Conn. App. 205, 214, 708 A.2d 620, cert. denied, 244 Conn.

933, 711 A.2d 726 (1998); *Shadhali, Inc.* v. *Hintlian,* 41 Conn. App. 225, 229–30, 675 A.2d 3, cert. denied, 237 Conn. 926, 677 A.2d 948 (1996); *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership,* 40 Conn. App. 434, 443, 671 A.2d 1303 (1996); *Oakland Heights Mobile Park, Inc.* v. *Simon,* 36 Conn. App. 432, 433, 651 A.2d 281 (1994).

In addition, the particular conduct of the lawsuits underlying the court's determination relative to the plaintiff's unclean hands all occurred *after* the late charges were incurred. Thus, the equitable considerations at play regarding interest and attorney's fees had little bearing on the issue of late charges, which were incurred prior to the institution of the first action. We therefore conclude that the court abused its discretion in denying late charges in this instance.

That determination does not end our inquiry. There remains the question of precisely what late charges the plaintiff may collect. A lender may collect late charges for payments not paid by the due date prior to acceleration of the note. *Shadhali, Inc.* v. *Hintlian,* supra, 41 Conn. App. 229–30. Late charges no longer are "due" after the lender has instituted an action on the note. *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership,* supra, 40 Conn. App. 443.

The plaintiff's original action was instituted on February 16, 1993, the date of service of process. Under *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership,* supra, 40 Conn. App. 434, no late charges are "due" after that date. Consequently, late charges may be assessed only for the time period of September 1, 1992, through February 16, 1993. We therefore remand this case for further proceedings to determine the proper amount of late charges consistent with this decision.

V

In their cross appeal, the defendants argue that the court improperly held that the plaintiff did not have

to "plead or prove" the applicability of § 52-592,[6] the accidental failure of suit statute.[7] We disagree.

Deemed a "saving statute," § 52-592 enables parties to institute actions despite the expiration of the applicable statute of limitations. *Pepitone* v. *Serman*, 69 Conn. App. 614, 619, 794 A.2d 1136 (2002). Warranting a broad construction, § 52-592 essentially is remedial in nature. *Ruddock* v. *Burrowes*, 243 Conn. 569, 575, 706 A.2d 967 (1998).

In this case, § 52-592 was not at issue. The defendants raised no statute of limitations defense in their initial answer, and the court denied their request for leave to amend, which sought to add a statute of limitations defense.[8] The accidental failure of suit statute applies only to actions barred by an otherwise applicable statute of limitations. See *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, 246 Conn. 378, 382, 716 A.2d 883 (1998).

Our Supreme Court rejected an identical claim in *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 311 A.2d 74 (1972). "While it has been suggested that it might be desirable for the plaintiff to plead sufficient facts necessary to bring the matter within the purview of § 52-592 . . . [our Supreme Court] has never held this

---

[6] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction . . . the plaintiff . . . may commence a new action . . . ."

[7] Practice Book § 10-3 (a) provides in relevant part that "[w]hen any claim made in a complaint. . . is grounded on a statute, the statute shall be specifically identified by its number." In *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003), this court held that the failure to comply with the directive of Practice Book § 10-3 (a) will not necessarily bar recovery as long as the defendants are sufficiently apprised of the applicable statute during the course of the proceedings. It is uncontested that the defendants were so apprised in this case.

[8] We note that the defendants did not appeal from that denial.

to be a requirement. . . . It has been and is the holding of [our Supreme Court] that matters in avoidance of the Statute of Limitations need not be pleaded in the complaint but only in response to such a defense properly raised." (Citation omitted.) Id., 392. For that reason, the defendants' cross appeal must fail.

On the plaintiff's appeal, the judgment is reversed only as to the denial of late charges and the case is remanded for further proceedings consistent with this opinion and to set a new law day. On the defendants' cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.