BECKENSTEIN ENTERPRISES-PRESTIGE PARK,
LLC, ET AL. *v.* JONATHAN M. KELLER ET AL.
(AC 28680)

Harper, Beach and Robinson, Js.

Argued October 24, 2008—officially released July 21, 2009

*Michael P. Berman*, with whom was *Suzanne LaPlante*, for the appellants (plaintiffs).

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellees (named defendant et al.).

*Opinion*

ROBINSON, J. The present case arises from the sale of commercial property in East Hartford for the amount of $56.9 million. The plaintiffs are the grantors of the property and include the following business entities: Beckenstein Enterprises-Prestige Park, LLC; 155 Realty; Riverview Square, LLC; Riverview Square II, LLC; and Tolland Enterprises. By way of a substituted revised complaint filed on November 30, 2006, the plaintiffs asserted four counts, sounding in tortious interference with a contract, civil conspiracy, breach of the implied covenant of good faith and fair dealing and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., respectively, against the purchasers of the property, including Jonathan M. Keller; the Fremont Group, LLC; Fremont 155, LLC; Fremont 131, LLC; Fremont 183, LLC; Fremont Riverview, LLC; Fremont Prestige Park, LLC; and 654 Tolland Street, LLC.[1] The plaintiffs appeal from the judgment of the

---

[1] Nicholas R. Morizio, Dow & Condon, Inc., and Ronald J. Gross were also named as defendants, but the action against them was withdrawn prior to trial. We therefore refer to Jonathan M. Keller; the Fremont Group, LLC; Fremont 155, LLC; Fremont 131, LLC; Fremont 183, LLC; Fremont Riverview, LLC; Fremont Prestige Park, LLC; and 654 Tolland Street, LLC, as the defendants.

trial court, rendered after a jury trial, in favor of the defendants. On appeal, the plaintiffs claim that the court improperly (1) charged the jury that the statute of limitations served to narrow the actionable claims to only those that arose from wrongful conduct occurring after October 4, 2000, (2) refused to allow the plaintiffs to assert and to prove that an earlier action tolled the statute of limitations, (3) denied the plaintiffs' request for leave to amend their reply and (4) directed a verdict in favor of the defendants on the claim for breach of the implied covenant of good faith and fair dealing. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review. Robert Beckenstein was the managing partner of various entities that owned and operated a large portfolio of commercial real estate. The various entities were under the general management of Beckenstein Enterprises. In contemplation of his death, Robert Beckenstein decided to liquidate the real estate holdings of Beckenstein Enterprises and to plan for the orderly dissolution of the related companies. To effect this end, Beckenstein negotiated employment agreements with certain members of his executive staff, in particular, offering a significant salary and severance package to his in-house counsel, Dennis Smith, to retain his services during the liquidation process. The term of the employment agreement began on March 1, 1999, and continued through March 1, 2001. During this time, Smith was to provide his services in a full-time capacity.

On May 25, 2000, Smith, acting on behalf of Beckenstein Enterprises, entered into a purchase and sale agreement with the Fremont Group, LLC, an entity controlled by Keller, for the purchase and sale of several commercial properties located in East Hartford. The purchase price stated in the agreement was $58 million. On June 6, 2000, before the sale of the real estate could be finalized, Beckenstein died. By way of a rider to the

original agreement, the purchase and sale agreement was subsequently amended on August 17, 2000, and stated an amended purchase price of $56.9 million, $1.1 million less than the original contract price. By limited warranty deeds dated October 26, 2000, a total of twenty-three properties were conveyed to the defendants pursuant to this agreement.

On October 24, 2003, the plaintiffs instituted the present action, alleging that in the months preceding Beckenstein's death and in the time thereafter, Keller, acting alone and in concert with Smith, used the opportunities presented by the sale of the Beckenstein properties to enrich himself and the entities he controlled. A substituted revised complaint was filed with the court on November 30, 2006. Thereafter, on December 13, 2006, the defendants filed an answer and asserted nine special defenses. The plaintiffs, by way of a reply filed on December 15, 2006, responded with a general denial to each special defense.

The trial commenced on January 24, 2007. On March 1, 2007, the court denied the plaintiffs' request for leave to amend their reply to the defendants' statute of limitations defense. Thereafter, at the charging conference held on March 6, 2007, the court issued several oral rulings to address pending matters before the court. Specifically, the court granted the defendants' motion for a directed verdict on the third count of the substituted revised complaint, sounding in breach of the implied covenant of good faith and fair dealing. The court then denied the plaintiffs' motion for a directed verdict on the defendants' statute of limitations defense. After deliberations, the jury returned a verdict in favor of the defendants on the three remaining counts. This appeal followed. Additional facts will be set forth as necessary.

## I

Before we can address the plaintiffs' three claims on appeal regarding the defendants' statute of limitations defense, we must first address an argument posed by the defendants in their brief. The defendants argue that this court cannot review the plaintiffs' claims as a result of the general verdict rule.[2] We disagree.

The general verdict rule provides that "if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party." (Internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). In circumstances in which a party has requested interrogatories that fail to flesh out the basis of the jury's verdict, this court has noted that the general verdict rule is still applicable because "[i]t is not the *mere submission* of interrogatories that enables us to make that determination; rather, it is the submission of properly framed interrogatories that discloses the grounds for the jury's decision." (Emphasis in original.) *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 463, 661 A.2d 126 (1995), aff'd, 237 Conn. 25, 675 A.2d 844 (1996). "[I]n a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." (Internal quotation marks omitted.) *Modugno* v. *Colony Farms of Colchester, Inc.*, 110 Conn. App. 200, 203, 954 A.2d 270 (2008).

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error

---

[2] The general verdict rule is not applicable to the plaintiffs' claim on appeal challenging the court's decision directing the verdict in favor of the defendants on the third count of the complaint, in which the plaintiffs alleged a breach of the implied covenant of good faith and fair dealing. That claim challenges the court's legal determination that the plaintiffs could not prevail on their claim for breach of the implied covenant of good faith and fair dealing.

that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 371, 727 A.2d 1245 (1999).

A review of the record reveals that the defendants denied the allegations underlying all four of the claims contained in the plaintiffs' substituted revised complaint. The defendants also asserted nine special defenses, four of which were presented to the jury by way of a jury charge, including the statute of limitations, waiver, equitable estoppel and ratification. Because the grounds for the jury verdict were not fleshed out by properly framed interrogatories, any of those four special defenses or the denial could have supported the jury's general verdict in favor of the defendants. See *Modugno* v. *Colony Farms of Colchester, Inc.*, supra, 110 Conn. App. 203 ("general verdict rule applies, inter alia, to a situation in which there has been a denial of a complaint along with the pleading of a special defense" [internal quotation marks omitted]).

In their reply brief, the plaintiffs argue that the general verdict rule does not bar appellate review of their claims because the route to the jury verdict via any of the five grounds was tainted by the statute of limitations jury charge. Specifically, it is their contention that not only did the court's jury instruction on the statute of limitations defense prevent the jury from considering the defendants' actions on and prior to October 24, 2000, as a basis for liability, but this limitation also

undermined the jury's consideration of the defendants' other special defenses, specifically, waiver, ratification and estoppel because it limited the time frame that the jury could consider in its determination of these special defenses.

Upon review of the record, we agree with the plaintiffs. The court's instruction limiting the jury's consideration to events occurring after October 24, 2000, logically would have an impact on the jury's consideration of the other special defenses. Even if the jury found in favor of the defendants on their special defense of equitable estoppel, waiver or ratification, its determination necessarily would be limited by the statute of limitations instruction. Compare *Sandow* v. *Eckstein*, 67 Conn. App. 243, 248, 786 A.2d 1223 (2001) (finding untainted path to jury verdict because defect related only to one theory of liability, thereby leaving other paths unaffected), cert. denied, 259 Conn. 919, 791 A.2d 566 (2002) with *Monterose* v. *Cross*, 60 Conn. App. 655, 661, 760 A.2d 1013 (2000) (finding general verdict rule inapplicable because defect would impact jury's consideration of both bases for liability). Because the jury's consideration of all the bases that theoretically could support its general verdict is intertwined with the statute of limitations instruction, the general verdict rule does not bar our review of the plaintiffs' claim that attacks this instruction. Accordingly, we now turn to a review of the plaintiffs' claims on appeal.

II

The plaintiffs first argue that the court improperly charged the jury that the causes of action in the first, second and fourth counts of the substituted revised complaint could be based only on wrongful conduct occurring after October 24, 2000. Specifically, the plaintiffs maintain that they sufficiently pleaded and proved a continuing course of conduct to toll the statute of

limitations; the court, however, denied their request to charge the jury with this instruction. Absent this instruction, the plaintiffs argue, the court's statute of limitations instruction was clearly erroneous.

Although the plaintiffs claim an error in the jury instructions, we review this claim cognizant of the fact that it actually stems from the court's decision to deny the plaintiffs' request to charge the jury with instructions on the continuing course of conduct. In denying the plaintiffs' request to charge, the court concluded that the doctrine was inapplicable because the plaintiffs had not pleaded the existence of a continuing course of conduct in avoidance of the statute of limitations defense.[3] On appeal, the plaintiffs maintain that this conclusion was improper because they were not required to plead the continuing course of conduct doctrine in response to the defendants' special defense because the factual allegations supporting the application of the doctrine were contained in the complaint. Therefore, the plaintiffs argue that the continuing course of conduct doctrine is not a "new matter" that must be pleaded in avoidance.

This court has previously concluded that the continuing course of conduct doctrine is a matter that must be pleaded in avoidance of a statute of limitations special defense. *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 607 n.7, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007); see also Practice Book § 10-57.[4] We are not persuaded by the plaintiffs' argument contravening this authority.

---

[3] The court's decision to deny the plaintiffs' request to charge the jury with instructions on the continuing course of conduct was one of a series of oral rulings on March 6, 2007.

[4] Pursuant to Practice Book § 10-57, a "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. . . ."

Furthermore, we note that our Supreme Court has "previously . . . afforded trial courts discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules as long as the opposing party has not raised a timely objection to the procedural deficiency." *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273, 819 A.2d 773 (2003). The trial court's decision under these circumstances is reviewed under the abuse of discretion standard. "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." Id., 274.

In the present case, the court correctly indicated that the continuing course of conduct doctrine is a matter that must be pleaded in avoidance pursuant to Practice Book § 10-57. By replying with a general denial to the defendant's special defenses, the plaintiffs failed to comply with this rule of practice. Accordingly, we conclude that the court did not abuse its discretion when it refused to charge the jury with instructions on the continuing course of conduct doctrine when the plaintiffs failed to plead the matter in avoidance.

### III

The plaintiffs next argue that the court improperly denied their offer to prove the applicability of the accidental failure of suit statute; General Statutes § 52-592 (a); because it was not specifically pleaded. They maintain that the court improperly interpreted the rules of practice to require the specific pleading of this statute in avoidance of the defendants' statute of limitations special defense. We disagree.

The question of whether the court properly concluded that § 52-592 must be pleaded in avoidance is a question of law over which our review is plenary. See

*Tocco* v. *Wesleyan University*, 112 Conn. App. 28, 31, 961 A.2d 1009 (2009) (interpretation of rules of practice and statutes is question of law subject to plenary review). Although not directly on point, this court's discussion in *McKeever* v. *Fiore*, 78 Conn. App. 783, 795, 829 A.2d 846 (2003), is instructive to our analysis of the plaintiffs' argument. In *McKeever*, this court upheld the trial court's conclusion that the plaintiffs did not have to plead or to prove the applicability of § 52-592. The court noted that the statute was not at issue in the case because the defendants did not raise a statute of limitations defense. In the course of its analysis, the court referenced the discussion set forth in *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 392, 311 A.2d 74 (1972), in which our Supreme Court addressed a similar issue: "While it has been suggested that it might be desirable for the plaintiff to plead sufficient facts necessary to bring the matter within the purview of § 52-592 . . . [our Supreme Court] has never held this to be a requirement. . . . It has been and is the holding of [our Supreme Court] that matters in avoidance of the Statute of Limitations need not be pleaded in the complaint but only in response to such a defense properly raised." (Internal quotation marks omitted.) *McKeever* v. *Fiore*, supra, 795–96, quoting *Ross Realty Corp.* v. *Surkis*, supra, 392. Although this discussion does not directly determine the circumstances under which § 52-592 must be pleaded, it is significant to note that, contrary to the plaintiffs' position in the present case,[5] the court's discussion does indicate, albeit indirectly, that § 52-592 is considered to be a matter to be

[5] In support of their argument on this claim, the plaintiffs cite *Ross Realty Corp.* v. *Surkis*, supra, 163 Conn. 392, and posit that this decision stands for the proposition that "a party is not required to plead the accidental failure of suit statute, § 52-592 (a), although it would be desirable to do so." As previously indicated, this argument misconstrues the basis of the court's analysis. *Ross Realty Corp.* specifically addresses the situation in which a statute of limitations defense was not raised by the defendant; therefore, it is distinguishable from the facts of the present case.

pleaded in avoidance of a statute of limitations special defense.

In light of the foregoing, we conclude that the court properly denied the plaintiffs' offer to prove the applicability of § 52-592 after the close of evidence when it had not been pleaded in the complaint or as a matter in avoidance of the statute of limitations defense.

## IV

The plaintiffs next argue that even if they were required to plead § 52-592, the court improperly denied their request to amend their reply to assert this statute in avoidance of the defendants' special defense. They argue that the court abused its discretion because the amendment would not have unduly delayed the trial and that denial of their request would prejudice their case severely. We disagree.

"The law is well-settled that belated amendments to the pleadings rest in the sound discretion of the trial court. . . . While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . On rare occasions, this court has found an abuse of discretion by the trial court in determining whether an amendment should be permitted . . . but we have never found an abuse of discretion in denying an amendment on the eve of trial, long after the conclusion of pretrial proceedings." (Citations omitted; internal quotation marks omitted.) *Pitts* v. *DeCosta*, 87 Conn. App. 605, 609, 867 A.2d 66 (2005).

In this case, the plaintiffs filed a request for leave to file an amended reply to the defendants' ninth special defense on March 1, 2007, immediately prior to the close of their case-in-chief. The court denied their request on the ground that "the amendment [was], in fact, untimely, [and] that the defendants justifiably relied on the general denial asserted in the reply to the statute of limitations special defense in the defense and prosecution of this case, at least up to this point. Permitting this amendment would, in fact, result in the interjection of additional, both legal and potentially factual, issues in a case where the plaintiffs have essentially rested."

The plaintiffs argue that the court abused its discretion because their request to amend was not untimely. Specifically, they argue that the court improperly relied on *Simmons* v. *Southern Connecticut Gas Co.*, 7 Conn. App. 245, 251, 508 A.2d 785 (1986), which upheld a trial court's decision to deny the posttrial request to amend the reply to a statute of limitations defense that was asserted five years prior. The plaintiffs maintain that their case is distinguishable from *Simmons* because the defendants asserted their statute of limitations defense one month before trial, significantly closer to trial than the situation contemplated in *Simmons*. Although the plaintiffs are correct in their assertion that the defendants in *Simmons* filed a statute of limitations defense significantly earlier than the defendants did in the present case, the plaintiffs have not sustained their burden of persuading this court that the trial court abused its discretion by denying the amendment at the close of the plaintiffs' evidence.

Therefore, we agree with the court and conclude that the denial of the request to amend the reply to the defendants' special defenses was not improper.

## V

The last claim asserted by the plaintiffs is that the court improperly granted the defendants' motion for a

directed verdict on the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. Specifically, the plaintiffs maintain that there was evidence of a bad faith $1.1 million reduction in the contract price and that the court improperly directed a verdict on this factual issue that should have been presented to the jury. We disagree.

As an initial matter, we set forth the applicable standard of review for the plaintiffs' claim. "Our standard for reviewing a challenge to a directed verdict is well settled. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Patterson* v. *Travelers Casualty & Surety Co.*, 104 Conn. App. 824, 827, 936 A.2d 241 (2007), cert. denied, 286 Conn. 920, 949 A.2d 481 (2008).

A review of the record reveals that the court granted the defendants' motion for a directed verdict on two independent grounds. First, the court concluded that the plaintiffs changed the theory of recovery underlying this claim and that allowing this altered theory of recovery to go forward would constitute unfair surprise on and prejudice to the defendants. Second, and more importantly, the court determined that the plaintiffs' claim failed as a matter of law because a claim for breach of the implied covenant of good faith and fair dealing must be based on the terms of the contract and cannot be applied to achieve a result contrary to the

express terms. Thus, it was the court's position that the jury legally could not have resolved this claim in the plaintiffs' favor.

Our analysis as to the plaintiffs' claim is impeded by the fact that the plaintiffs' argument does not directly attack the grounds asserted by the court in support of its decision to grant the directed verdict.[6] Rather, it appears as though the plaintiffs are attempting to recast the basis of the court's decision to grant a directed verdict as a factual determination based on the sufficiency of the evidence. As the court did not base its determination on this ground, this argument misconstrues the court's ruling. In making their argument, however, the plaintiffs indirectly attack the independent bases offered by the court. We will therefore discuss these arguments in the context of the court's actual ruling.

We first address the argument as it relates to the legal conclusions of the court. As previously indicated, the record reveals that the court determined, as a matter of law, that the defendants were entitled to a directed verdict on the third count because the plaintiffs received the $56.9 million they were entitled to receive pursuant to the rider amending the original purchase and sale agreement. Accordingly, the court concluded that the plaintiffs could not assert a viable claim for a breach of the implied covenant of good faith and fair dealing premised on an allegation that they were entitled to a higher amount.[7]

---

[6] It should be noted that our review of this case has been impeded significantly by the lack of identifying references in the record. Given the number of pleadings filed with the court, and the quantity of transcripts, it was difficult to accurately ascertain the target of the parties' arguments and related court rulings. Although the parties included citations to the transcript, our review of the cited portions of the record did not necessarily shed light on the argument before us, given the lack of identifying references in the transcript itself.

[7] "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the

On appeal, the plaintiffs argue that they sufficiently pleaded and proved their claim because they demonstrated that the defendants "induced Smith to breach his duty of loyalty to [the] plaintiffs and cooperated with Smith in his self-dealing, all of which constituted bad faith, resulted in a $1.1 million reduction in the contract price, among other things, and deprived the plaintiffs of benefits afforded to them in the purchase and sale agreement." They further argue that the $1.1 million reduction in price, as stated in the rider, was obtained at the same time that the defendants "were secretly promising lucrative management contracts for Smith's company . . . ." This argument appears to imply that the court improperly concluded that a claim for breach of the implied covenant of good faith and fair dealing is not viable when the plaintiffs received what they had contracted for in the rider. Specifically, the plaintiffs indirectly argue that a legally viable claim exists when a party to a contract induces the person acting on the plaintiffs' behalf to breach the covenant; however, the plaintiffs do not provide any legal analysis or authority to support their contention that the court's legal finding was inaccurate. Rather, they simply restate their factual allegations and reference the supporting evidence. Accordingly, we decline to review this claim as it has been inadequately briefed. See, e.g., *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004) ("[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is

---

agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiffs right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 16–17 n.18, 938 A.2d 576 (2008).

required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

On the basis of this conclusion, we need not discuss whether the court properly found that the plaintiffs unfairly altered their theory of recovery after the close of evidence. Even if we were to find that the plaintiffs did not alter their damage claim at the close of evidence, their argument that the directed verdict was improper would still fail because of their failure to brief their argument adequately regarding the legal determinations of the court. Therefore, the plaintiffs' claim is denied.

The judgment is affirmed.

In this opinion the other judges concurred.