CHARLES R. CREWS II *v.* JOHN L. PUDLINSKI ET AL.
(AC 32439)

Alvord, Espinosa and Schaller, Js.

Argued April 12—officially released July 5, 2011

*Juri E. Taalman*, with whom, on the brief, was *Timothy Brignole*, for the appellant (plaintiff).

*Timothy S. Jajliardo*, with whom, on the brief, was *Kathleen F. Adams*, for the appellee (defendant Lime Rock Associates, Inc.).

*Opinion*

ALVORD, J. The plaintiff, Charles R. Crews II, appeals from the judgment of the trial court rendered in favor

of the defendant Lime Rock Associates, Inc.,[1] following a jury trial and the court's denial of his motion to set aside the verdict. On appeal, the plaintiff claims that, inter alia, the court improperly admitted into evidence a release and waiver of liability. The defendant argues that application of the general verdict rule prohibits our review on the merits. We agree. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff was the team manager for his son's professional car racing team. On June 29, 2004, the team traveled to Lime Rock Park, located in Lakeville, for the "Star Pro Mazda Series," a race sanctioned by the International Motor Sports Association (IMSA). Previously, on June 26, 2004, the plaintiff signed approximately "[f]ive or six" documents included in a package of "insurance regulations, pit regulations, [and] regulations on how [participants] were to conduct [themselves] . . . ." Upon the plaintiff's execution of the documents, the IMSA provided him with an identification card that allowed access to the various racetracks where the IMSA sanctioned events were held throughout the season. This identification card granted the plaintiff access to the pit area of the racetracks, which was a restricted area. Included in the package of documents was a "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement for All IMSA/ Sports Car Events" (waiver) pursuant to which the plaintiff agreed to, among other things, "release, waive, discharge and covenant not to sue" and "assume full responsibility for any risk of bodily injury, death or property damage arising out of or related to the [IMSA

---

[1] Lime Rock Associates, Inc., is the only remaining defendant in this appeal. The plaintiff filed this complaint against John L. Pudlinski, Kathryn A. Pudlinski, Lime Rock Associates, Inc., and International Motor Sports Association (IMSA). The plaintiff withdrew its claims against IMSA. Prior to trial, the plaintiff entered into a settlement agreement with John L. Pudlinski and subsequently withdrew his complaint against both Pudlinskis.

events] whether caused by the negligence of the [IMSA and its affiliates] or otherwise."

The plaintiff navigated the paved pit area of Lime Rock Park aboard a Yamaha TT90 motorbike.[2] On the evening of July 2, 2004, Kathryn A. Pudlinski (Pudlinski), the defendant's employee, was operating a motor vehicle when she was departing the "false grid," which was a staging area for the race cars near the track. She testified that she had "punched out" for the day. The plaintiff testified that as he approached Pudlinski's vehicle on his motorbike, in an attempt to avoid a possible collision with Pudlinski's vehicle he applied his brakes "as hard as [he] could," which caused the front tire to lock, and the "front end [of the motorbike] just washed out." There was no contact between the two vehicles. The plaintiff fell off the motorbike and was injured and transported to the hospital.

The plaintiff alleged in the complaint that, as relevant to the defendant in the present appeal, inter alia, (1) the defendant was negligent in its obligation to maintain the activities of the operators on the roadway[3] and (2) the defendant was vicariously liable for Pudlinski's acts as an employee.[4] The defendant raised two special

---

[2] The defendant produced the operation manual for the vehicle as evidence. The manual indicates a maximum weight capacity of eighty-eight pounds, and that the vehicle "is designed for off-road use only by young operators under adult instruction and supervision." The plaintiff testified that he is five feet, eleven inches tall and that at the time of the accident, he weighed 199 pounds.

[3] The plaintiff alleged that the defendant was negligent for failing to, inter alia, (1) establish a centerline in the roadway, (2) establish and enforce traffic patterns and speed limits in the pit area, (3) limit the volume of traffic in the pit area, and (4) inform Pudlinski she was unable to exit the track through the false grid.

[4] The plaintiff alleged that Pudlinski was negligent for failing to, inter alia, (1) grant the right of way to oncoming traffic, (2) timely signal a warning, (3) stop her vehicle prior to causing the plaintiff to take evasive action and crash, (4) sound her horn to warn the plaintiff, (5) maintain her vehicle in the proper lane, (6) keep proper lookout for pedestrians and vehicles and (7) use the proper exit from the racetrack.

defenses, alleging that the plaintiff's negligence contributed to the accident and that the plaintiff could not recover due to his execution of the waiver.

The parties tried the case before a jury over a three week period between July 21 and August 7, 2009. Both parties submitted evidence, and a number of witnesses testified. The jury returned a defendant's verdict on August 7, 2009. The court denied the plaintiff's motion to set aside the verdict. This appeal followed.

The plaintiff claims that (1) the trial court improperly admitted the waiver into evidence, (2) the waiver was unenforceable as against public policy, (3) a plaintiff seeking to recover from an agent and principal may bring an action against either party, but cannot recover any more compensatory damages from the principal than it could from the agent if the principal is only vicariously liable, (4) a plaintiff who is injured by an employee operating her vehicle in the course of employment and settles with the employee does not thereby release the employer, (5) the release given by the plaintiff to John L. Pudlinski and withdrawal of the action as to him as Pudlinski's father did not operate as a release to the daughter despite a withdrawal of the action having been filed as to the daughter, and (6) the withdrawal of claim against Pudlinski did not operate as a release of the vicarious liability of the defendant or its liability as a joint tortfeasor. The defendant argues that this court is precluded from reviewing the plaintiff's claims under the general verdict rule. We agree and affirm the judgment of the trial court.

"The general verdict rule provides that if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . In circumstances in which a party has requested interrogatories that fail to flesh out

the basis of the jury's verdict, this court has noted that the general verdict rule is still applicable because [i]t is not the *mere submission* of interrogatories that enables [the reviewing court] to make that determination; rather, it is the submission of properly framed interrogatories that discloses the grounds for the jury's decision. . . . [I]n a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 685–86, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

In the present case, interrogatories were submitted to the jury.[5] The interrogatory at issue inquired whether the defendant had proven by a preponderance of the evidence that the waiver applied to the defendant. The jury was instructed to answer this single interrogatory regardless of its verdict. The plaintiff argued that the interrogatory, when read in conjunction with a portion

---

[5] Although multiple interrogatories were submitted, the jury was instructed to answer the other interrogatories only in the event that it arrived at a plaintiff's verdict.

of the court's jury instructions, removed the verdict from the application of the general verdict rule. The challenged portion of the jury instruction states that "[i]f you find by a preponderance of the evidence that the plaintiff cannot recover because he has released or waived his claims against the defendant, then you must return a verdict for the defendant. If you find the defendant has not proved this defense by a preponderance of the evidence, then you are to ignore the release and waiver document and decide the issues in the case in accordance with my instructions." We disagree.

Our thorough and independent review of the record suggests that the jury could have returned its verdict on any combination of a number of findings, including that (1) Pudlinski was not negligent, or, if she was, she was not acting within the scope of her employment, (2) the defendant was not negligent, (3) the plaintiff was more than 50 percent negligent, or (4) the accident was not caused by negligence. We are not persuaded that the language used by the court in one paragraph of its forty-five page charge required that the jury first assess the application of the waiver. The court never indicated a specific order in which the jury was to consider the issues, and, in fact, instructed the jury that "[r]egardless of the order of my instructions, you must not single out any particular instruction or give it more or less emphasis," and then, again, when reviewing the verdict forms and interrogatories, the court stated, "I'm going to review the documents in no particular order of significance." See *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 464, 661 A.2d 126 (1995) (court unconvinced jury "necessarily found in favor of the plaintiff on the merits of the case and then answered the interrogatories" in part because charge specifically stated that "[t]he order in which the instructions are given to [the jury] have no significance whatsoever as to their importance in the case" [internal quotation marks omitted]), aff'd, 237

Conn. 25, 675 A.2d 844 (1996). The record provides no indication of the order in which the jury examined the issues.

"We are precluded from delving into the minds of the jurors in order to ascertain the basis and the rationale underlying their decision." *Eagar* v. *Barron*, 2 Conn. App. 468, 472, 480 A.2d 576 (1984). We, therefore, presume that the jury found every issue in favor of the prevailing party and apply the general verdict rule. See *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, supra, 115 Conn. App. 685. Our application of the general verdict rule bars further review of the plaintiff's claims.

The judgment is affirmed.

In this opinion the other judges concurred.